UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael J. McNEESE and Laura
Conwell, Defendants–Appellants.

Nos. 88–1951, 88–1952.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 9, 1989.

Decided May 2, 1990.

James L. Santelle, R. Jeffrey Wagner, Maxine A. White, Asst. U.S. Attys., John E. Fryatt, U.S. Atty., Matthew L. Jacobs,

Asst. U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Marna M. Tess–Mattner, Jeffrey A. Kaufman, Franklyn M. Gimbel, Gimbel, Reilly, Guerin & Brown, Milwaukee, Wis., for Michael J. McNeese.

Robert J. Lerner, Milwaukee, Wis., for Laura Conwell.

Before CUMMINGS and KANNE, Circuit Judges, and GRANT, Senior District Judge.*

GRANT, Senior District Judge.

Following a jury trial in the United States District Court for the Eastern District of Wisconsin, defendants Michael McNeese and Laura Conwell were convicted of conspiracy to possess with intent to distribute cocaine and of possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 and of 18 U.S.C. § 2. McNeese and Conwell appeal their convictions and sentences on six grounds. On all issues we affirm.

*Background*

When narcotics courier Thomas Chase was arrested in late January 1987, with a supply of cocaine obtained from Michael McNeese and Laura Conwell in his possession, he chose to plead guilty and to cooperate with the police investigation of the cocaine distribution scheme in which he had been involved. Chase identified McNeese and Conwell (the appellants before this court) and Peter Zink as participants in the drug conspiracy.[1] Chase himself had been Zink's courier in drug transactions since August 1985, and had picked up cocaine from McNeese, Zink's source, on fifteen to twenty occasions between August 1986 and January 1987. According to Chase, at five of these meetings Laura Conwell accompanied McNeese.

Evidence of this drug conspiracy also came from another informant, a drug "customer" named Mark Stauss, who identified Zink as his source of cocaine. In October 1986 Stauss cooperated with the police by engaging in a controlled purchase of cocaine from Zink. When Zink heard that the police were seeking to arrest him for his cocaine sale to Stauss, Zink ordered Chase to kill Stauss. Chase did in fact shoot Stauss; it was following his arrest for the attempted murder of Stauss that Chase identified Zink and the defendants McNeese and Conwell as conspirators in a cocaine distribution scheme. On March 19, 1987, Chase gave his statement to law enforcement agents; on April 1, he identified Laura Conwell's residence and automobile.

When agent John Schaefer sought warrants to search the residences of McNeese and Conwell on August 28, 1987, he filed an affidavit in support of the warrants that described the information from Chase and the subsequent evidence collected for a sufficient showing of probable cause. Beginning on March 30, 1987, as part of the drug investigation sparked by Stauss' arrest, federal and local drug enforcement agents began conducting surveillance of the residences of McNeese and Conwell, and regularly searched the garbage containers placed on the curbs in front of their houses. The affidavit reported that kilogram-size packaging materials with cocaine residue were found in the garbage left outside Conwell's residence on March 31 and April 28, 1987. Moreover, in that second search the latent fingerprints of Michael McNeese were discovered on one of the paper bags in which were the wrappers and plastic bags with trace amounts of cocaine. McNeese's garbage, searched May 17, 1987, revealed a torn note from Peter Zink's wife to McNeese alerting him that Chase was cooperating with law enforcement in the investigation of the drug conspiracy. Between June 12 and August 12, 1987, as part of their investigation, the police and special agents collected data about telephone calls made from the residences of McNeese, Conwell, Zink and Chase. They listed hundreds of calls back

---

* Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

1. Peter Zink had been charged as a third co-conspirator defendant herein, but failed to appear for trial.

and forth between the co-conspirators themselves and between them and others identified as narcotics customers. Surveillance of McNeese and Conwell between July 23 and 27, 1987 revealed five incidents of extremely brief meetings with others, often in cars. After listing this evidence, agent Schaefer concluded the affidavit by presenting the knowledge he had gained about drug trafficking, based on his training and experience in controlled substance investigations.

At trial, the testimony of agents, officers, fingerprint and narcotic experts, and the unindicted co-conspirator Thomas Chase presented evidence of the defendants' participation in the drug conspiracy that filled in the interstices between the facts offered in the affidavit. Several witnesses described the frequent movement of Conwell and McNeese between their residences and together to other locations, sometimes carrying packages. Officers on surveillance observed Conwell placing the garbage outside her home on March 30, 1987, before driving to McNeese's residence. Those garbage bags, retrieved by officers in the early hours of March 31, contained cocaine residue. McNeese's garbage contained other evidence of drug activity, according to the testimony: notes to "Mike" from "Laura" and from "Bobby" (the nickname of Zink's wife), scraps of paper with handwritten notes referring to "Eastern" and "Northwestern," airline baggage tags and telephone messages.

On August 28, 1987, McNeese and Conwell were arrested and their homes searched pursuant to a warrant. Various types of gambling equipment and $25,000 in cash were found in McNeese's house; a small amount of cocaine and a scale were seized in Conwell's apartment.

McNeese and Conwell were subsequently indicted and charged with one count of conspiracy to possess with intent to distribute cocaine and two counts of possession with intent to distribute approximately one kilogram of a mixture containing cocaine. The defendants' motion to suppress was denied without an evidentiary hearing. Following a jury trial McNeese was convicted on all three counts; he was fined $20,000 and was sentenced to a total of twelve years of imprisonment, five years of which are mandatory with no eligibility for parole, plus a supervised release term of four years. Conwell was convicted on counts one and two and was sentenced to five mandatory years in custody, without eligibility of parole, followed by four years of supervised release. Their appeals were timely filed.

## Issues Presented

On appeal, McNeese and Conwell have raised six objections to the decision below. The first focus of their appeal is the magistrate's probable cause determination and the district court's denial of their motion to suppress evidence obtained in the searches of their residences. Other evidentiary issues raised are the district court's admission of evidence of the acts of co-conspirators and the sufficiency of evidence of cocaine possession. In addition, appellants challenge the court's striking of the citation to 21 U.S.C. § 846 from counts 2 and 3 of the indictment; its unconstitutional application of the mandatory minimum penalty of 21 U.S.C. § 841(b)(1)(B) in the sentencing of Conwell; and its improper jury instructions on the legal concepts of aiding and abetting.

## I. Probable Cause and the Motion to Suppress

Defendant McNeese challenged the magistrate's probable cause determination in his and Conwell's motion to suppress the evidence obtained by the government during a search of their homes on August 28, 1987.

### A. Decisions below

The disposition of this suppression and other pretrial motions was referred to United States Magistrate Robert L. Bittner, who recommended that each defendant's motion to suppress be denied. The magistrate found that the affidavit in support of the search warrants established probable cause to believe that a crime was being committed. Examining the search war-

rants, he determined that they contained neither material omissions of fact nor over-broad descriptions of the property to be seized; furthermore, they were presented in good faith and issued by a neutral magistrate. Finally, he recommended that the defendants' request for an evidentiary *Franks* hearing [2] be denied because he found no false statements or material omissions of fact in the affidavit that would require such a hearing.

Senior District Judge John W. Reynolds, adopting the magistrate's recommendation, denied defendants' motion to suppress. The district court agreed that the affidavit clearly disclosed probable cause to believe that the defendants were engaged in a drug conspiracy, and found personal observations of drug trafficking in the defendants' houses unnecessary to establish probable cause to search those residences.

The court was unpersuaded by defendants' arguments that the affidavit was based on stale information gathered by the affiant seven months before the warrant application was filed. Such a time period was of less significance in the eyes of the court when considering a conspiracy that had continued for more than two years. Moreover, surveillance of the two defendants less than one month prior to the warrant application revealed a pattern of fleeting meetings consistent with cocaine distribution. Therefore the court was satisfied that the information supporting the warrant was current and reliable, and that the warrant was based on probable cause. It was also satisfied that the warrant was sufficiently definite in its description of the evidence related to drug trafficking that the agents could determine what properties were sought with reasonable certainty.

Finally, the court concluded that a *Franks* hearing was not necessary, despite defendants' listing of facts omitted from the affidavit in support of the search warrant, because the omissions cited by the defendants were not material.

Although the affidavit does not disclose that the government's informant was charged with attempted first degree murder, it does alert the court to the fact that the informant had agreed to plead guilty to a criminal offense and to cooperate with the government. This information was sufficient to alert the court to potential credibility problems with statements from the informant, and therefore no material fact was omitted. The affidavit also does not disclose that a garbage search conducted in July, 1987 failed to recover incriminating evidence, but it does disclose that a search in May, 1987 produced incriminating evidence. The incriminating evidence seized in an earlier search is not diminished by the lack of evidence in a later search. The court does not believe the omission was material because[,] even if it had been disclosed, there was still probable cause for the search.

Order of February 9, 1988 at 4–5.

### B. Appellant's position

Pending first before this court is the defendant McNeese's appeal of the district court's denial of his motion to suppress all evidence obtained during the illegal search of his residence. It was his position that the magistrate issued the warrant in reliance on an affidavit that had omitted three material facts affecting the probable cause determination. First, the affidavit failed to state that the informant Thomas Chase had been charged with attempted murder; instead, it simply stated that he "had agreed to plead guilty to an offense against the laws of the State of Wisconsin." Second, the affidavit omitted the fact that Chase had not identified the McNeese residence as the site of cocaine transactions; indeed, insisted McNeese, Chase did not know where McNeese lived. Third, the affidavit failed to reveal that no incriminating evidence had been discovered in the three months prior to the execution of the

2. The Supreme Court has required that a hearing be held, at the defendant's request, "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978).

warrant, despite continued searches of the garbage during that period. The appellant argues that the magistrate and the district court erred in failing to recognize that these material omissions from the affidavit invalidated the warrant authorizing the search of McNeese's residence under *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). He further asserts that the warrant was based on stale information and that the facial deficiencies in the affidavit rendered the executing officers' reliance upon the warrant unreasonable. We will consider each contention.

C. Applicable Legal Standards

■ The standard applied to appellate review of a motion to suppress is clear error:

A district court's denial of a motion to suppress evidence will be affirmed on appeal unless it is clearly erroneous. We will rely on the district court's findings of fact absent a showing of clear error.... 'A finding is "clearly erroneous" when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). 'Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.' *Anderson v. Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

*United States v. Grier,* 866 F.2d 908, 935 (7th Cir.1989) (quoting *United States v. D'Antoni,* 856 F.2d 975, 978–79 (7th Cir. 1988)) (citations omitted). In denying defendants' motion to suppress, the district court found that there had been sufficient probable cause to issue a warrant to search the defendants' residences; we must determine whether that ruling was clearly erroneous.

■ A search warrant may be issued only if it appears from the complaint or affidavit filed in support of it that there is probable cause to believe that an offense has been committed and that the defendant has committed it. *See* U.S. Const. amend. IV; Fed.R.Crim.P. 4(a). An affidavit has made a proper showing of probable cause when it sets forth facts sufficient to induce a reasonably prudent person to believe that a search thereof will uncover evidence of a crime. *Berger v. New York,* 388 U.S. 41, 55, 87 S.Ct. 1873, 1881, 18 L.Ed.2d 1040 (1967). In deciding whether a search warrant is supported by probable cause, courts must use the flexible totality-of-the-circumstances standard set forth in *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983):

The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Gates,* 462 U.S. at 238, 103 S.Ct. at 2332.

■ Probable cause is a fluid concept, *Gates,* 462 U.S. at 232, 103 S.Ct. at 2329, a flexible, practical, nontechnical conception. *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949). It is based on reasonable belief that evidence in the place to be searched will lead to an arrest or conviction for a particular offense. "Probable cause denotes more than a mere suspicion, but does not require certainty." *United States v. Ellery,* 678 F.2d 674, 677 (7th Cir.), *cert. denied,* 459 U.S. 868, 103 S.Ct. 150, 74 L.Ed.2d 126 (1982), *quoted in United States v. Cross,* 816 F.2d 297, 302 (7th Cir.1987).

■ When reviewing a magistrate's finding of probable cause in issuing a warrant, an appellate court is to accord that determination great deference. *United States v. Leon,* 468 U.S. 897, 914, 104 S.Ct. 3405, 3416, 82 L.Ed.2d 677 (1984); *Gates,* 462 U.S. at 236, 103 S.Ct. at 2331. Nevertheless, we review conscientiously the sufficiency of the affidavit, for magistrates must not be "rubber stamps" for law enforcement agencies. *Leon,* 468 U.S. at 914, 104 S.Ct. at 3416; *Gates,* 462 U.S. at 239,

103 S.Ct. at 2332. The duty of a reviewing court is to ensure that the magistrate had a "substantial basis" for concluding that, "under the totality of the circumstances," probable cause existed. *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332; *United States v. Zambrana*, 841 F.2d 1320, 1332 (7th Cir. 1988).

## D. Analysis
### 1. *The Affidavit*

■ Agent Schaefer of the U.S. Drug Enforcement Administration, a man experienced in controlled substance investigations, submitted a lengthy affidavit describing his investigation of McNeese and Conwell. He recounted the information supplied to police by the informant Chase, and the subsequent investigations that tested Chase's information and gathered evidence of drug trafficking: searches of the trash and garbage containers of both defendants (which resulted in the discovery of physical evidence of cocaine possession and other drug activity), pen registers on their telephones (which revealed contacts with other conspirators and with known narcotics customers), and surveillance of the defendants (which revealed a pattern of brief encounters that are consistent with drug trafficking). The affidavit included a description of the automobile identified by Chase as the car belonging to McNeese's girlfriend, and of its registration to Laura Conwell. Schaefer's affidavit also presented the conclusions he had drawn from his training and experience in drug-trafficking investigations.

The appellant has not challenged the reliability and veracity of informant Chase or of agent Schaefer; nor has he disputed the subsequent evidence accumulated by the agents' independent investigations. Given the large amount of incriminating information detailed in the affidavit, this court has no difficulty concluding that the magistrate had a substantial basis for finding that sufficient probable cause existed to justify the issuance of the warrants sought. The affidavit presented more than a mere suspicion that defendants McNeese and Conwell were engaged in a conspiracy to possess with intent to distribute cocaine. It offered to the court substantial evidence from which to conclude that McNeese, Conwell and Zink were partners in the drug business; that McNeese handled kilogram or half-kilogram packages containing cocaine; that both McNeese and Conwell travelled between their residences and to meeting points in patterns consistent with drug trafficking; and that drug traffickers like McNeese and Conwell frequently stored items of evidentiary value at their homes.

The Supreme Court has recognized that a trained law enforcement officer can make deductions, assess probabilities and draw inferences from the evidence collected during their investigations that might allude an untrained person. *Gates*, 462 U.S. at 231–32, 103 S.Ct. at 2328 (quoting *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). It has also found that an informant's veracity or basis of knowledge may be tested by referring to "indicia of reliability." *Gates*, 462 U.S. at 233, 103 S.Ct. at 2329. In this case, the agent tested the informant's credibility over time and corroborated his accusations by subsequent independent investigation of the co-conspirators. The magistrate was presented with specific facts indicating that the defendants were involved in drug trafficking. *See Gates*, 462 U.S. at 243, 103 S.Ct. at 2334.

On these bases the district court was satisfied that the search warrants were based on probable cause, and so are we. The *Gates* Court reminds reviewing courts that "after-the-fact scrutiny ... of the sufficiency of an affidavit should not take the form of *de novo* review." *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331. We defer to the magistrate's determination of probable cause, and hold that his finding had a substantial basis in fact.

### 2. *Omitted Evidence*

■ However, a search warrant may be made void if a movant establishes by a preponderance of the evidence that: (1) a factual statement made in an affidavit supporting a warrant is false; (2) the affiant

**594**

made the false statement either knowingly and intentionally or with reckless disregard for the truth; and (3) without the false statement, the remainder of the affidavit is insufficient to establish probable cause. *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978). Although McNeese has not alleged that statements in the affidavit were false, he has insisted that, had three material omissions of fact been included in the affidavit, probable cause would not have been found. These three critical defects in the agent's sworn statement supporting the warrant rendered the affidavit insufficient to support a finding of probable cause, assert appellants.

■ The Seventh Circuit tests an affidavit's allegedly omitted statements under the same standard that the *Franks* Court has established for false statements. *United States v. Williams,* 737 F.2d 594, 604 (7th Cir.1984), *cert. denied,* 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985). The omission of a fact from an affidavit is material only if it amounts to deliberate falsehood or reckless disregard for the truth. *United States v. Kimberlin,* 805 F.2d 210, 252 (7th Cir.1986), *cert. denied,* 483 U.S. 1023, 107 S.Ct. 3270, 97 L.Ed.2d 768 (1987).[3] Mere negligence by the affiant does not constitute reckless disregard for the truth. *United States v. A Residence Located at 218 Third Street,* 805 F.2d 256, 258 (7th Cir.1986). Nor is an omission material if, in context, the information was of such minimal significance that its omission could not reasonably have affected the magistrate's judgment in finding probable cause to search. *Kimberlin,* 805 F.2d at 251.

■ This court has made clear that a defendant seeking a *Franks* hearing bears a substantial burden to demonstrate proba-

ble falsity. *United States v. Hornick,* 815 F.2d 1156, 1158 (7th Cir.1987). He must offer direct evidence of the affiant's state of mind or inferential evidence that the affiant had obvious reasons for omitting facts in order to prove deliberate falsehood or reckless disregard. *Residence Located at 218 Third Street,* 805 F.2d at 259. Other circuits have similarly applied *Franks* to affidavits containing omissions. *See, e.g., United States v. Stanert,* 762 F.2d 775, 781, *amended by* 769 F.2d 1410 (9th Cir. 1985), requiring "a substantial showing that the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading." *See also United States v. Campino,* 890 F.2d 588, 592 (2d Cir. 1989), *cert. denied sub nom. Estrada Ruiz v. United States,* —— U.S. ——, 110 S.Ct. 1787, 108 L.Ed.2d 788 (1990); *United States v. Owens,* 882 F.2d 1493, 1498 (10th Cir.1989); *United States v. Martin,* 866 F.2d 972, 979 (8th Cir.1989).

■ With this firmly rooted standard as our guide, we turn to each of the omissions alleged by McNeese to be material. He first asserts that the affiant's failure to reveal to the issuing magistrate the serious offense with which the informant was charged renders the warrant deficient: Had the magistrate known that the informant was cooperating with the authorities because he was charged with attempted first degree murder, he would have scrutinized Chase's credibility much more closely.

We disagree; indeed, we find that the alleged omission does not rise even to the level of negligence. The facts offered in the affidavit make clear that the informant agreed to plead guilty and to cooperate because of his long-term narcotics dealings.

---

**3.** This court has upheld the validity of a warrant based upon an affidavit that deliberately withheld details for the protection of the informant, as long as the information excised is not essential to support the warrant. *See United States v. Danovaro,* 877 F.2d 583, 587–88 (7th Cir.1989). It has also upheld the validity of a search warrant supported by an affidavit containing some illegally obtained information when the untainted information, considered by itself, established

probable cause for the warrant to issue. *United States v. Johnston,* 876 F.2d 589, 592–93 (7th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 364, 107 L.Ed.2d 350 (1989). It has overturned the validity of an arrest warrant where probable cause was based solely on the officer's intentional false and omitted statements. *Olson v. Tyler,* 771 F.2d 277, 282 (7th Cir.1985), and 825 F.2d 1116, 1129 (7th Cir.1987).

Based upon the extensive information set forth in the affidavit, we do not believe that the alleged omission of the specific criminal charge against Chase was made knowingly or with reckless disregard. Moreover, such information would not even have been material to a finding of probable cause, for, had the information been disclosed, there is not a reasonable probability that the result of the proceeding would have been different. *See United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985); *United States v. Kimberlin*, 805 F.2d at 251 (omission could not reasonably have affected the magistrate's finding of probable cause).

In the reply brief, appellant McNeese insists that "[o]nly the magistrate can state with certainty whether the additional information would alter the probable cause determination." In his recommendation to the district court, Magistrate Bittner made clear that the naming of the specific charge against the informant was immaterial:

> ... However, the information provided is sufficient to alert the Court that Chase may be motivated to resolve his own predicament at the expense of the defendants by fabricating information which he knows the government needs to prosecute the defendants. Since the Court is made aware of such a scenario, it can, if it deems necessary, probe more deeply into the circumstances. The failure of the affidavit to supply information about the precise offense for which Chase was arrested is not material and does not rise to *Franks* violation.

Magistrate's Recommendation at 17. The district court also found the information about Chase in the affidavit "sufficient to alert the court to potential credibility problems with statements from the informant, and therefore no material fact was omitted." Order of February 9, 1988 at 4. This court therefore holds that there was no clear error in the magistrate's and district judge's express findings that the omission of the actual charge against Chase

was of no consequence to the determination of probable cause.

■ McNeese also argues that informant Chase did not know where he lived, and did not link his residence to any narcotics trafficking. Because the affidavit failed to present this material lack of information, McNeese insists that the warrant authorizing the search of his home was not based upon probable cause that the residence contained evidence of drug activity.

A review of the affidavit reveals that the informant Chase specifically identified defendant Conwell's residence and automobile, and described the activities of McNeese (whom Chase initially knew as "Nort" or "Nortie") from his meetings with McNeese between August 1986 and January 1987 "at prearranged locations on at least a weekly basis to pick up quantities of cocaine ranging from a quarter pound to two kilos." Affidavit at 2. It is clear from the affidavit's recounting of Chase's information that the courier did not pick up drugs from the defendants' residences, but had been to the home of Conwell (known to Chase as "Pretty Blonde"). Although the affidavit does not state how the agent found McNeese's address without Chase's identification, many simple explanations arise from other information the officers had before them: Conwell's frequent visits to McNeese's house, McNeese's frequent visits to Conwell's residence, and a tracing of the telephone numbers to mention three. Chase's information had been seen to be reliable, and had been corroborated by independent police work. We have held "that a police officer's gathering of evidence to corroborate an informant's report established probable cause under *Gates.*" *Zambrana*, 841 F.2d at 1333–34 (citing *Hornick*, 815 F.2d at 1158).

The affidavit also contained a three-page description of the knowledge Special Agent Schaefer has gained from his training and experience in controlled substances investigations,[4] knowledge which led him to conduct surveillance of the appellants and

---

4. The three pages of the affidavit describing Schaefer's expert knowledge of drug trafficking was omitted, without explanation, from the ap-

pellate brief of the defendants-appellants herein. This court declines the temptation to consider whether such an omission was material.

their residences and to examine their garbage for evidence. Realizing that it is likely that narcotics distributors would keep the drugs, implements of distribution, records, and proceeds in their residences, we find it reasonable to assume that a search of those premises would contain certain evidence. The affidavit need not contain personal observations that such evidence was kept at the residences. *See United States v. Reyes,* 798 F.2d 380, 382 (10th Cir.1986); *United States v. Fama,* 758 F.2d 834, 838 (2d Cir.1985). Finally, because NcNeese offered no showing that the affiant's omission was made intentionally or with reckless disregard for the truth, his allegation of material omissions of facts linking his residence to drug evidence must fail.

■ Nor was it a material omission, as McNeese contends in his third allegation, that the affidavit failed to point out the lack of evidence produced in the garbage searches during the summer of 1987. As the district court stated,

> [t]he incriminating evidence seized in an earlier search is not diminished by a lack of evidence in a late search. The court does not believe the omission was material because, even if it had been disclosed, there was still probable cause for the search.

Order of February 9, 1988 at 5. Evidence of drug trafficking had been discovered; subsequent fruitless searches did not alter that fact. Given the ongoing nature of drug conspiracy activities, probable cause still existed three months after the evidence of cocaine was discovered in garbage searches.

■ Even if we were to suppose that the affiant intentionally omitted the fact that no evidence of drugs had been found in the defendants' garbage for three months, the final element of the *Franks* test must be established. A substantial preliminary showing that the affidavit contained reckless or deliberate falsities and omissions must be followed by a substantial showing that the affidavit purged of those falsities and supplemented by the omissions would not be sufficient to support a finding of probable cause. *See Franks,* 438 U.S. at 171–72, 98 S.Ct. at 2684. Appellant did not meet this second prong of *Franks.* Our review of the record reveals that the magistrate had a substantial basis for concluding that probable cause existed, whether or not the three-month period of fruitless searches was explicitly pointed out in the affidavit. Nor has McNeese challenged the information actually found in the affidavit; and that information, standing alone, provided a firm basis for the judge's determination of probable cause. *See United States v. Johnston,* 876 F.2d 589, 592 (7th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 364, 107 L.Ed.2d 350 (1989) (affidavit, with allegedly illegally obtained information excised, was sufficient to establish probable cause).

Upon consideration of all the evidence alleged by McNeese to have been omitted from the affidavit, we find no merit to the appellant's material omission claims. Appellant did not prove either that the alleged omissions were made in reckless disregard for the truth or that the affidavit, without that information, could not support a finding of probable cause. Unable to meet either prong of the *Franks* test, appellant was not entitled to an evidentiary hearing on the question of probable cause. Accordingly, we hold that the district court did not err in finding that the omissions were of negligible value to the defendants and in denying their motion to suppress the evidence collected under the search warrant that had been supported by the affidavit in question.

### 3. *Stale information*

■ Appellant contends that the information contained in the affidavit supporting the search warrant was stale, for there was a seven-month period between the informant's last drug pick-up from them and the issuance of the warrant.

■ It is true that the age of the information supporting the application for a warrant is a factor that the magistrate should consider when determining that there is probable cause to believe that evidence being sought will be found in the

place to be searched. *See United States v. Batchelder*, 824 F.2d 563, 564 (7th Cir. 1987). If the information is too old, it is considered stale and probable cause no longer exists. *Sgro v. United States*, 287 U.S. 206, 210–12, 53 S.Ct. 138, 140–41, 77 L.Ed. 260 (1932). Nevertheless, the warrant can be issued if other factors indicate that the information is reliable and that the object of the search will still be on the premises. *Batchelder*, 824 F.2d at 564. Courts have found that search warrants were not stale when based on information nine months old (*Batchelder*, 824 F.2d at 564); six months old (*United States v. Williams*, 603 F.2d 1168, 1172 (5th Cir. 1979), *cert. denied sub nom. Scalf v. United States*, 444 U.S. 1024, 100 S.Ct. 687, 62 L.Ed.2d 658 (1980)); or five months old (*United States v. Grandstaff*, 813 F.2d 1353, 1357 (9th Cir.), *cert. denied*, 484 U.S. 837, 108 S.Ct. 119, 98 L.Ed.2d 78 (1987); *United States v. Reyes*, 798 F.2d at 382). Moreover, when a conspiracy to distribute drugs has been ongoing for years, and is clearly an activity of a protracted and continuous nature, the passage of time between the last described act and the application for the warrant diminishes in significance. *See Andreson v. Maryland*, 427 U.S. 463, 478 n. 9, 96 S.Ct. 2737, 2747 n. 9, 49 L.Ed.2d 627 (1976); *United States v. Hernandez–Escarsega*, 886 F.2d 1560, 1566 (9th Cir.1989); *United States v. Jones*, 801 F.2d 304, 314 (8th Cir.1986).

In this case, the cocaine distribution conspiracy had been ongoing for more than two years. It is true that Chase's involvement in the conspiracy ended with his arrest in January 1987. However, the information about the narcotics operation given by the informant to the agents and officers in March, five months before the issuance of the warrant, indicated the informant's personal knowledge of that possession and distribution scheme. There were sufficient specific details of Chase's drug pick-ups from McNeese and of the subsequent repackaging of the cocaine by Chase and Zink. The reliability of Chase's information was borne out by such subsequent corroboration as the identification of Laura Conwell through the automobile registra-

tion identification given to the agents by Chase. The informant's reliability, verified by investigations of the law enforcement officers, was another factor considered by the magistrate when determining whether to issue the search warrant.

In addition, the magistrate and district judge recognized that the affidavit was relying on more recent information than that received from co-conspirator Chase. The sworn statement presented facts derived from evidence gathered in garbage searches (including McNeese's fingerprints on a bag containing cocaine traces), telephone call identification, and surveillance of McNeese and Conwell in late July which revealed brief meetings (behavior indicative of drug distribution) less than one month prior to the application of the search warrant. Such factors bolstered the reliability of the information provided by the cooperating co-conspirator Chase.

Finding that the facts presented in the affidavit, when viewed together, were not stale information, we will not overturn the determination of the magistrate and the district court judge.

### 4. Reasonable Reliance

Appellant argues that, to the extent that the affidavit underlying the warrant was acutely defective, the executing officers could not have reasonably relied upon the warrant. Thus the seized material cannot fall under the protection of the good faith exception to the exclusionary rule. *See Leon*, 468 U.S. at 923, 104 S.Ct. at 3421.

Since we find that the affidavit was not "lacking in indicia of probable cause," *id.*, this argument loses all impact. By concluding that the affidavit adequately supported the magistrate's probable cause determination, we need not address the possibility of suppressing evidence obtained in the search of the defendant's home under the *Leon* criteria. *See United States v. Pritchard*, 745 F.2d 1112, 1121 n. 2 (7th Cir.1984), *cert. denied*, 474 U.S. 1085, 106 S.Ct. 860, 88 L.Ed.2d 899 (1986).

In conclusion, after consideration of the totality of the circumstances, we defer to

the magistrate's and district court's finding that there had been sufficient probable cause to issue a warrant to search defendant McNeese's residence. We hold that there was no error in the court's denial of the defendants' motion to suppress.

## II. Admissibility of Evidence of Co-conspirators' Acts

■ Co-conspirator Thomas Chase testified at the trial of McNeese and Conwell that he and Zink had been engaged in a cocaine distribution scheme since at least August 1985, and that he had met McNeese, Zink's "source," and Conwell, McNeese's girlfriend, sometime before August 1986. Chase also testified that Zink hired him to kill Mark Stauss;[5] that he shot Stauss in an attempt to kill him on January 27, 1987; and that the police arrested Chase at Stauss' home as Chase was attempting to flee.

Both in a pretrial motion in limine and in a later motion for mistrial, appellants sought unsuccessfully to exclude the evidence surrounding Zink's order that Chase kill Stauss and the subsequent shooting of Stauss, on the grounds of irrelevance and prejudice. Before this court they reiterate that there was no evidentiary showing that the shooting in question was related to or furthered the alleged drug conspiracy. They also argue that Zink's solicitation to murder Stauss, a revenge plan unconnected to his alleged drug dealings with McNeese and Conwell, was very prejudicial when related by inference to the altogether separate alleged conspiracy with McNeese and Conwell. They thus claim now that the court's admission of this evidence constituted reversible error.

■ Determinations on the admissibility of evidence are subject to the abuse of discretion standard. *United States v. Perez*, 870 F.2d 1222, 1225 (7th Cir.), *cert. denied sub nom.*, *Calderon–Abeja v. United States*, — U.S. —, 110 S.Ct. 136, 107 L.Ed.2d 95 (1989). Under that standard a

reviewing court gives special deference to the evidentiary rulings of the trial court. *United States v. Shukitis*, 877 F.2d 1322, 1327 (7th Cir.1989). We recognize that the trial judge, who saw and heard the evidence firsthand, can best balance probity and prejudice. *United States v. D'Antoni*, 874 F.2d 1214, 1218 (7th Cir.1989) (quoting *United States v. Brown*, 688 F.2d 1112, 1117 (7th Cir.1982)). Thus an appellant "carries a heavy burden on appeal because an evidentiary ruling will be reversed only if the trial court committed *'a clear abuse of discretion.'"* *Jones v. Hamelman*, 869 F.2d 1023, 1027 (7th Cir.1989) (quoting *Bohannon v. Pegelow*, 652 F.2d 729, 732 (7th Cir.1981)) (emphasis in *Jones*).

We find that the district court did not abuse its discretion in admitting evidence of the Stauss shooting. After hearing full argument on this matter prior to trial, the court permitted the government to present evidence of the shooting in its attempt to establish that the acts were in furtherance of a conspiracy. However, defense counsel were reminded that they could respond with appropriate motions if the government should not prove its conspiracy theory. Our review of the record indicates that the evidence at trial did demonstrate a relationship between the shooting and the drug conspiracy. Cocaine user-turned-informant Stauss was shot by conspirator-turned-informant Chase on order of Stauss' cocaine supplier, conspirator Zink, in January 1987, approximately one and one-half years after conspirators McNeese and Conwell became involved in the drug distribution scheme and shortly after Chase's last pick-up of cocaine from McNeese and Conwell. It was reasonable to conclude that the murder of Stauss was attempted to prevent the informant from disclosing information about the cocaine distribution conspiracy. It was also relevant for the jury to consider that defendant McNeese may have known of these events, for one search of McNeese's garbage uncovered a torn note from "Bobby" (Zink's wife) to "Mike"

---

**5.** Following his arrest and agreement to plead guilty and to cooperate with the police, cocaine user Mark Stauss made a "controlled buy" from his "source," conspirator Peter Zink, on October

14, 1986. On the basis of that purchase a warrant was issued for Zink's arrest. When Zink learned that Stauss had "turned him in," Chase testified, he hired Chase to kill Stauss.

(McNeese's given name) that read, "Mike, get yourself a Kenosha newspaper, Tuesday, May 19th. Tom talked." On that date the Kenosha News ran an article stating that Thomas Chase had agreed to cooperate with local, state and federal authorities in drug investigations.

 This circuit recognizes that, once a conspiracy is proven to exist, only slight evidence is needed to establish a defendant's participation in that conspiracy. *United States v. Marren,* 890 F.2d 924, 933 (7th Cir.1989). There is no question here of the existence of the conspiracy or of the membership of these defendants in the conspiracy. The attempted murder occurred during the pendency of the conspiracy. *See United States v. Troop,* 890 F.2d 1393, 1402 (7th Cir.1989). The exclusion of this evidence, therefore, would have left a "chronological and conceptual void" in the account of events surrounding the role of co-conspirator Chase in the drug conspiracy. *United States v. Ford,* 840 F.2d 460, 464 (7th Cir.1988) (citing *United States v. Hattaway,* 740 F.2d 1419, 1425 (7th Cir.), *cert. denied,* 469 U.S. 1089, 105 S.Ct. 599, 83 L.Ed.2d 708 (1984)). We hold that the district court did not abuse its discretion in allowing the jury to consider the Stauss shooting as part of the relevant and admissible evidence, as an act done during the course of and in furtherance of the drug conspiracy.

 Relevant evidence is, by its nature, prejudicial; it must be unfairly prejudicial to be excluded. *See United States v. Montoya,* 891 F.2d 1273, 1285 (7th Cir.1989) (citing *United States v. Blandina,* 895 F.2d 293, 299 (7th Cir.1989)). Under Federal Rule of Evidence 403, evidence relevant to the crime charged is not inadmissible unless its probative value is substantially outweighed by the danger of unfair prejudice. *D'Antoni,* 874 F.2d at 1217 (citing *United States v. Hawkins,* 823 F.2d 1020, 1023 (7th Cir.1987)). The fact that evidence is prejudicial or damaging to the defendant does not of itself classify the evidence as inadmissible. *Montoya,* 891 F.2d at 1285 (quoting *United States v. Medina,* 755 F.2d 1269, 1274 (7th Cir.1985)).

 The government argued that the shooting of Stauss, a government informant, substantiated its theory that the defendants were members of a secretive, dangerous enterprise whose very existence depended on the silence of its members. The district court found that the shooting was done during the course of, and in furtherance or protection of, the drug conspiracy; on that basis it admitted the evidence. However, during its instructions to the jury on the elements of co-conspirator liability, the court required the jury to consider each defendant's case separately and each defendant's membership in the conspiracy based solely on that defendant's acts and statements. It also cautioned the jury on assessing informant testimony and on the credibility of witnesses, including those testifying under a grant of immunity. We find that these jury instructions, which specifically and carefully defined the elements of the crimes with which the appellants were charged, limited whatever unfair prejudicial impact the evidence of the Stauss shooting might have had. Therefore the risk of unfair prejudice arising from this evidence did not substantially outweigh its probative value. *See United States v. Bucey,* 876 F.2d 1297, 1315 (7th Cir.), *cert. denied,* ── U.S. ──, 110 S.Ct. 565, 107 L.Ed.2d 560 (1989). Indeed, we find that the shooting was "intricately related to the facts of the case." *D'Antoni,* 874 F.2d at 1217 (citing *Hawkins,* 823 F.2d at 1023, quoting in turn *Hattaway,* 740 F.2d at 1425).

Defendants' second argument is that the plan to kill Stauss was altogether separate from the drug conspiracy; indeed, they suggest that there were two separate and distinct enterprises. However, that depiction of the events belies the evidence. The jury found that there was a conspiracy to possess cocaine with intent to distribute it between August 1, 1985 and September 15, 1987, and that the defendants were conspirators in that scheme. The defendants have not challenged the government's proof of conspiracy under Count I. The common criminal objective of the conspiracy was cocaine distribution; there was

ample evidence at trial for a jury to find that the attempt to murder Stauss, who was cooperating with police to provide evidence of cocaine sales, was done to further or to promote the overall drug conspiracy. *See United States v. Sababu,* 891 F.2d 1308, 1322–24 (7th Cir.1989).

The parties involved in a conspiracy do not have to know the other conspirators *or to participate in every aspect of the conspiracy. Sababu,* 891 F.2d at 1323. As long as they knowingly embraced the same criminal objectives, they participated in a single conspiracy. *Id.* In the case before us, the conspirators were performing different functions in pursuit of common criminal objectives. *United States v. Napue,* 834 F.2d 1311, 1332 (7th Cir.1987). Although the defendants did not control all aspects of the conspiracy, the Stauss shooting was part of the single overreaching conspiracy embraced by the defendants. *See, e.g., United States v. Diaz,* 864 F.2d 544, 548–49 (7th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 2075, 104 L.Ed.2d 639 (1989). Our review of the record reveals that there was ample evidence to support the integral part that Zink's order of Stauss' murder played in the furtherance of the drug distribution conspiracy. That these defendants were not directly involved in the shooting does not mandate a different result. *See Sababu,* 891 F.2d at 1323. We find there was sufficient evidence for the jury to conclude that McNeese and Conwell knowingly embraced the common criminal objectives of the conspiracy. We also conclude that the evidence surrounding the Stauss shooting was relevant to the conspirators' furtherance of their drug scheme and that the danger of unfair prejudice did not substantially outweigh its probative value. Accordingly, we hold that the district court did not abuse its discretion in admitting this evidence, and we refuse to disturb that ruling on appeal.

### III. Sufficiency of Evidence of Possession

The appellants contend that the amount of cocaine admitted in evidence was insufficient as a matter of law to support their convictions for possession of 500 grams or more of cocaine with intent to distribute.

When challenging the sufficiency of the evidence presented at trial, an appellant bears a heavy burden. *United States v. Edun,* 890 F.2d 983, 986 (7th Cir.1989). This court must first "review all the evidence and all the reasonable inferences that can be drawn from the evidence in the light most favorable to the government." *United States v. Nesbitt,* 852 F.2d 1502, 1509 (7th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 808, 102 L.Ed.2d 798 (1989) (quoting *United States v. Pritchard,* 745 F.2d at 1122). It then must ask whether *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Pritchard,* 745 F.2d at 1122 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)) (emphasis in original). "Only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict." *Nesbitt,* 852 F.2d at 1509 (quoting *United States v. Whaley,* 830 F.2d 1469, 1473 (7th Cir.1987)), *cert. denied,* 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 202 (1988) (quoting in turn *United States v. Moore,* 764 F.2d 476, 478 (7th Cir.1985)).

To support a conviction for possession of a controlled substance, the government has to prove that the defendants possessed only a "measurable amount" of cocaine, not the amount alleged in the indictment. *United States v. Acevedo,* 891 F.2d 607, 611 (7th Cir.1989) (citing *United States v. Jeffers,* 524 F.2d 253, 258 (7th Cir.1975)). *Accord United States v. Holland,* 884 F.2d 354, 358 (9th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 552, 107 L.Ed.2d 549 (1989); *United States v. Bernard,* 757 F.2d 1439, 1443 (4th Cir.1985); *United States v. Nelson,* 499 F.2d 965, 966 (8th Cir.1974). The quantity of the controlled substance is not an essential element of the crimes proscribed under sections 841(a)(1) and 846; rather, it is a sentencing issue to be raised after proof of a

defendant's underlying guilt. *Acevedo*, 891 F.2d at 611 (citing *United States v. Scanzello*, 832 F.2d 18, 22 (3rd Cir.1987)). *Accord United States v. Brown*, 887 F.2d 537, 540 (5th Cir.1989).

The evidence showed that the agents had observed defendants' residences, had seen Conwell place garbage bags in her trash containers, had discovered cocaine residue and packaging materials in the garbage bags, had detected McNeese's fingerprints on one bag, and had formed the opinion that the packages could have held 4 kilograms of cocaine. *Compare United States v. Wagner*, 884 F.2d 1090, 1096 (8th Cir. 1989), *cert denied*, —— U.S. ——, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990) (with the chemicals and glassware found in defendant's residence, defendant could have produced 3.7 pounds of methamphetamine). On the strength of the evidence herein, viewed in the light most favorable to the government, this court is satisfied that there was sufficient evidence to support the jury's verdict against the defendants. A rational trier of fact could surely have been convinced by the evidence presented that McNeese and Conwell were guilty beyond a reasonable doubt of possession and distribution of cocaine. We have been presented with nothing by the appellants that would incline us to disturb the jury's verdict. *See United States v. Rivera*, 855 F.2d 420, 425 (7th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 511, 102 L.Ed.2d 546 (1988). Because it has long been the law in this circuit that any measurable amount of a prohibited narcotic drug may support the conviction of a possessor/distributor, we decline to reverse defendants' convictions on this issue.

### IV. The District Court's Correction of the Indictment

■ Counts 1, 2 and 3 of the indictment returned by the grand jury charged the defendants McNeese and Conwell with violating 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. § 2. Count 1 specifically alleged "that between on or about August 1, 1985 and on or about September 15, 1987 ... [defendants] did knowingly and willfully conspire with persons known and unknown

to the grand jury to intentionally and knowingly distribute cocaine, a Schedule II controlled substance." Count 2 alleged that "on or about March 31, 1987 ... defendants herein[ ] did knowingly and intentionally possess with intent to distribute approximately one kilogram of a mixture containing cocaine." Count 3 made the identical allegations concerning the date "on or about April 28, 1987."

After trial and prior to sentencing, the government filed a motion to strike the citation to section 846 from counts 2 and 3 of the indictment, alleging that its inclusion was a typographical error and that it was not a material part of the charged offenses. Upon review of the record the district court concluded that the citation error was immaterial and did not affect the defendants' substantial rights; it therefore granted the government's motion to strike in its Order of May 13, 1988.

Appellants contend that the district court erred in permitting the deletion of that citation from Counts 2 and 3. They argue that, even if the correction of clerical mistakes in an indictment is harmless error, any correction leading to an amendment of a charge constitutes reversible error *per se*. Because the indictment and the district court's jury instructions referred to both sections 841 and 846 under counts 2 and 3, appellants insist that the jurors could have found either that the defendants possessed the requisite 500 grams of cocaine, or that they attempted to possess that amount with intent to distribute it. Since that interpretation of the indictment was possible, claim appellants, their rights were substantially impaired. Moreover, they argue, the underlying reason for the government's motion to delete § 846 is that a sentence under § 846 must not contain a mandatory minimum penalty.

■ In certain circumstances, the district court commits reversible error when it allows an indictment to be amended at trial, *see United States v. Field*, 875 F.2d 130, 133 (7th Cir.1989) (citing *United States v. Galiffa*, 734 F.2d 306, 311 (7th Cir.1984), *cert. denied*, 474 U.S. 1032, 106

S.Ct. 592, 88 L.Ed.2d 572 (1985)), or after the verdict, *see United States v. Williams,* 798 F.2d 1024, 1037 (7th Cir.1986). Material amendments of an indictment can be made only by the grand jury. *Field,* 875 F.2d at 133 (citing *United States v. Nicosia,* 638 F.2d 970, 976 (7th Cir.1980), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981)). In reviewing the sufficiency of an indictment, a court should consider the challenged count as a whole and should refrain from reading it in a hypertechnical manner. *United States v. Gironda,* 758 F.2d 1201, 1209 (7th Cir.), *cert. denied sub nom. Spiess v. United States,* 474 U.S. 1004, 106 S.Ct. 523, 88 L.Ed.2d 456 (1985) (citing *United States v. Brack,* 747 F.2d 1142, 1147 (7th Cir.1984), *cert. denied,* 469 U.S. 1216, 105 S.Ct. 1193, 84 L.Ed.2d 339 (1985)). We begin with defendants' last assertion, that § 846 forbids a mandatory minimum penalty.

■ Sentence was imposed on McNeese and Conwell on May 13, 1988. At that time, section 846 provided:

> Any person who ... conspires to commit any offense in this subchapter is punishable by imprisonment or fine or both which *may not exceed the maximum punishment* prescribed for the offense, the commission of which was the object of the ... conspiracy. 21 U.S.C. § 846 (emphasis added).[6] This statutory provi-

sion makes no reference to a mandatory minimum penalty; rather, it provides only a limitation on the maximum penalty. In 1980 the Supreme Court determined that Congress did not intend 21 U.S.C. § 846 to authorize a sentencing court to impose a special parole term for conspiracy convictions. *Bifulco v. United States,* 447 U.S. 381, 398, 100 S.Ct. 2247, 2258, 65 L.Ed.2d 205 (1980).[7] Thereafter, courts routinely vacated terms of special parole and mandatory minimum penalties from the sentences of defendants convicted specifically on a § 846 conspiracy count.[8] *See, e.g., United States v. Dawson,* 642 F.2d 1060, 1063 (7th Cir.1981). Although later in 1988 Congress amended § 846, with explicit reference to *Bifulco,* to make mandatory minimum sentences and special parole terms imposable under § 846 as well as § 841, *see* footnote 6, *supra,* and *United States v. Montoya,* 891 F.2d at 1293, that amendment is not applicable to the defendants before us. When defendants McNeese and Conwell were sentenced, a mandatory minimum term of imprisonment could not be imposed under § 846, but could be imposed under § 841.

If the court had sentenced the defendants pursuant to the penalty provisions applicable to § 846, it would have been required under *Bifulco* to exclude a manda-

---

**6.** The Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, Title VI, § 6470(a), 102 Stat. 4181, 4312, 4377 (1988), amended section 846 to read: 'Any person who ... conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the ... conspiracy.' 21 U.S.C. § 846. The amendment explicitly provided that any mandatory minimum sentences and special parole terms that could be imposed for substantive narcotics offenses under § 841 are also applicable under this section. Thus congressional intent is now clear: "[A]ny penalty that may be imposed for a substantive drug offense may be imposed for [a] conspiracy to commit that offense." 134 Cong.Rec. S17,366 (daily ed. Nov. 10, 1988) (section-by-section analysis of H.R.5210, 100th Cong., 2d Sess.). *See United States v. Montoya,* 891 F.2d 1273, 1293 n. 25 (7th Cir.1989).

**7.** Under the *Bifulco* rule of lenity, criminal penalties must be narrowly construed; any ambi-

guity in a criminal statute, including the sentencing provisions, must be resolved in favor of lenity. 447 U.S. at 387, 100 S.Ct. at 2252.

**8.** Cases from other circuits following *Bifulco* that have invalidated sentences based upon 21 U.S.C. § 846 and have vacated the sentences with respect to the special parole terms include *United States v. Rivera–Santiago,* 872 F.2d 1073, 1090 (1st Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989); *United States v. Alvarado Garcia,* 781 F.2d 422, 428 (5th Cir.1986); *United States v. Brown,* 720 F.2d 1059, 1062 (9th Cir.1983); *United States v. Monaco,* 702 F.2d 860, 883 (11th Cir.1983); *Rousan v. United States,* 668 F.2d 1006 (8th Cir.1982). Examples of cases vacating supervised release terms are *United States v. Latham,* 874 F.2d 852, 864 (1st Cir.1989); *United States v. Molina–Uribe,* 853 F.2d 1193, 1198 (5th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1145, 103 L.Ed.2d 205 (1989).

tory minimum penalty, but could have imposed a sentence of "a term of imprisonment of not more than fifteen years" in addition to a fine. The court did impose five years in prison without parole under § 841. Theoretically, if the defendant had been given the maximum fifteen-year sentence or any lesser term in excess of five years that would require a five-year incarceration term, the fact that § 846 would not include the mandatory minimum sentence would be of no significance. *See United States v. Molina–Uribe*, 853 F.2d 1193, 1198 (5th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1145, 103 L.Ed.2d 205 (1989). We further note that subsequent amendments to the conspiracy provision have made clear Congressional intent to require mandatory minimum sentences for those convicted under § 846. Although we of course must follow the statute as it was written at the time of the crime and sentencing, in hindsight we can be assured that no injustice was done to these defendants by deleting reference to § 846 so that no confusion or complication would arise by the vacation of the court's sentence under counts 2 and 3 because of its initial inclusion.

We now turn to the question whether the striking of a citation from the indictment constitutes an impermissible amendment. "[A]n amendment occurs when 'the offense proved at trial was not fully contained in the indictment, for trial evidence had "amended" the indictment by *broadening* the possible bases for conviction from that which appeared in the indictment.'" *United States v. Kuna*, 760 F.2d 813, 817–18 (7th Cir.1985) (quoting *United States v. Miller*, 471 U.S. 130, 138, 105 S.Ct. 1811, 1816, 85 L.Ed.2d 99 (1985), with reference to *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960)). *See also United States v. Zingaro*, 858 F.2d 94, 103 (2d Cir.1988).

 It is generally recognized that a trial court cannot amend the indictment by eliminating or changing an essential element of the crime. This court has found a constructive amendment where a "complex set of facts" is presented to the jury during the trial which is distinctly different from the set of facts set forth in the charging instrument. *United States v. Muelbl*, 739 F.2d 1175, 1180–81 (7th Cir.1984). Alternatively, to find a constructive amendment the crime charged in the indictment must be "materially different or substantially altered at trial, [so that] it is impossible to know whether the grand jury would have indicted for the crime actually proved." *Id.*

*Kuna*, 760 F.2d at 818, *quoted in United States v. Mosley*, 786 F.2d 1330, 1335 (7th Cir.), *cert. denied*, 476 U.S. 1184, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986). *See also United States v. Peel*, 837 F.2d 975, 979 (11th Cir.1988). However, when the court's reading or description of the indictment alters the terms of the indictment in an insignificant manner, a material amendment is not found. *United States v. Franco*, 874 F.2d 1136, 1144 (7th Cir.1989) (no amendment in supplemental instructions); *United States v. Williams*, 798 F.2d at 1033 (no amendment in instructions); *United States v. Kramer*, 711 F.2d 789, 797 (7th Cir.), *cert. denied*, 464 U.S. 962, 104 S.Ct. 397, 78 L.Ed.2d 339 (1983) (no amendment in instructions). *See also United States v. Colonia*, 870 F.2d 1319, 1325 (7th Cir.1989); *United States v. Casey*, 835 F.2d 148, 154 (7th Cir.1987); *United States v. Williams*, 798 F.2d 1024, 1033 (7th Cir.1986); *United States v. Muelbl*, 739 F.2d 1175, 1180–81 (7th Cir.1984).

 A trial court has the power to amend an indictment when the court's change in the indictment is one of form only: when mere surplusage is eliminated, nothing is added to the indictment, and the remaining allegations state the essential elements of the offense. *United States v. Sazenski*, 833 F.2d 741, 743–44 (8th Cir. 1987), *cert. denied*, 485 U.S. 908, 108 S.Ct. 1083, 99 L.Ed.2d 242 (1988) (citing *United States v. Burnett*, 582 F.2d 436, 438 (8th Cir.1976)). Surplusage can include those offenses alleged in the indictment that were not the bases upon which the jury returned its verdict.

"A part of the indictment unnecessary to and independent of the allegations of the offense proved may normally be treated as 'a useless averment' that 'may be ignored,'" for it is "'merely surplusage and may be rejected.'" *Miller,* 471 U.S. at 136–37, 105 S.Ct. at 1815 (quoting *Ford v. United States,* 273 U.S. 593, 602, 47 S.Ct. 531, 534, 71 L.Ed. 793 (1927)). *See also United States v. Quintero,* 872 F.2d 107, 111 (5th Cir.1989); *United States v. Trice,* 823 F.2d 80, 89 n. 8 (5th Cir.1987).

In this case, the allegations in counts 2 and 3 express a violation of 21 U.S.C. § 841; the reference to § 846 is unnecessary and superfluous to those counts of the indictment. Rule 7(c)(3) of the Federal Rules of Criminal Procedure provides that a mistaken citation in an indictment may be harmless error:

> Error in the citation or its omission shall not be ground for dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead the defendant to the defendant's prejudice.

Fed.R.Crim.P. 7(c)(3). Unless the defendant is misled by the erroneous reference and prejudiced thereby, a miscitation is not a proper ground for overturning a conviction. *United States v. Lowe,* 860 F.2d 1370, 1381 (7th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989) (indictment based on violation of sentence-enhancement provision rather than predicate offense provision is valid); *United States v. Ray,* 514 F.2d 418, 422 (7th Cir.), *cert. denied sub nom. Barbee v. United States,* 423 U.S. 892, 96 S.Ct. 189, 46 L.Ed.2d 123 (1975) (indictment with wrong section of statute cited is valid). *See also United States v. Bonallo,* 858 F.2d 1427, 1431 (9th Cir.1988); *United States v. Massuet,* 851 F.2d 111, 116 (4th Cir.1988), *cert. denied sub nom. Trujillo v.*

*United States,* — U.S. —, 109 S.Ct. 785, 102 L.Ed.2d 776 (1989).

This court agrees with the trial judge that counts 2 and 3 of the indictment, read as a whole, charge the substantive offenses of § 841.[9] They allege the specific dates upon which, and locations at which, the illegal activity was claimed to have occurred; the amount of cocaine involved; and the forbidden conduct of possessing a controlled substance with intent to distribute it. Neither count 2 nor 3 mentions conspiracy.

It is the statement of facts presenting the elements of the offense rather than the citation to a statute that alerts a defendant to the charges against him and establishes the bases for the government's proof at trial. The record reveals that the government proved the set of facts alleged in count 2 against both defendants, and in count 3 against McNeese. The post-trial deletion of the reference to § 846 (which provided the basis for the government's proof only in count 1) cannot be considered an amendment because it was not a basis for conviction under counts 2 and 3.

It is clear from the record that the parties proceeded, both before and during trial, on the understanding that count 1 alleged conspiracy over a two-year period, and counts 2 and 3 charged actual possession on two dates. At close of trial, the jury instructions clearly distinguished the essential elements of the charges. Contrary to defendants' hypothesis, there is no indication from the transcript that the court's instructions could have misled the jury into believing that either a conspiracy or the attempt to possess cocaine was an element of counts 2 and 3. The jury verdict on each count leaves no room to doubt their convictions on actual possession of cocaine with intent to distribute it.

We further note that defendants have offered this court no showing that they

---

**9.** Although the sufficiency of the indictment was not challenged by defendants, we also state that we find the indictment to be a plain, concise and definite written statement of the essential facts constituting the offenses charged in satisfaction of Fed.R.Crim.P. 7(c)(1). As such, it informed the defendants of the nature of the

charges against them so that they could prepare their defense and could plead that an acquittal or conviction stand as a bar to subsequent prosecution for the same offense. *See Lowe,* 860 F.2d at 1378 n. 5; *Gironda,* 758 F.2d at 1209; *Ray,* 514 F.2d at 422.

were misled by the reference to § 846 or that they were prejudiced at any point in the proceedings by the mistaken mention of that section in counts 2 and 3. *See Casey*, 835 F.2d at 154. They do not claim surprise, disadvantage, or lack of adequate notice of the charges against them by this citation, *see Quintero*, 872 F.2d at 111, and we can find none in the record. Thus, we conclude that the defendants' substantial rights are in no way affected by the removal of the misplaced citation.

It is obvious that the striking of the conspiracy statute from the second and third counts of the indictment did not broaden the possible bases for conviction. We find that the reference to § 846 in counts 2 and 3 was mere surplusage. Once that reference was deleted, the proof at trial corresponded to the crimes charged in the indictment, and the record clearly reflected the understanding of the parties and the court throughout the proceedings. We hold that the deletion of § 846 from counts 2 and 3 of the indictment was not a material amendment to the indictment, and therefore affirm the district court's granting of the government's motion to strike reference to that statutory provision.

## V. Eighth Amendment Challenge to 21 U.S.C. § 841(b)

■ Appellant Laura Conwell challenges the jury's special verdict finding that she possessed 500 grams or more of cocaine under count 2. The only direct evidence of her involvement in these offenses, she insists, was her delivery of four ounces of cocaine to co-conspirator Zink and the discovery of a small amount of cocaine and cutting agent in her home on the day of her arrest. In light of that small quantity of evidence of cocaine, asserts Conwell, the imposition of a mandatory five-year sentence of imprisonment upon her constitutes cruel and unusual punishment in violation of the eighth amendment.

The statute in question provides that, "[i]n the case of a violation ... involving 500 grams or more of a mixture or substance containing a detectable amount of ... cocaine, ... such person shall be sentenced to a term of imprisonment which may not be less than 5 years...." 21 U.S.C. § 841(b)(1)(B).

■ The elements of § 841(b), an enhanced penalty provision, are to be considered by the court at sentencing after a jury finding of guilt. *Acevedo*, 891 F.2d at 611. Federal juries are not involved in the sentencing phase of the trial, and facts relevant to sentencing are determined only by the judge. *United States v. Savage*, 891 F.2d 145, 151 (7th Cir.1989). However, in narcotics possession cases a district court may include in its verdict form a special verdict that requires the jury to determine the quantity of controlled substance proven at trial against each guilty defendant. Because that finding is a factual one, it is an appropriate determination for the trier of fact.

As an enhanced penalty provision, [the] elements [of § 841(b)] need not be charged to the jury but instead are to be considered by the court at sentencing. *Once the proof at trial establishes a particular quantity of a controlled substance,* that amount triggers the application of § 841(b)'s sentencing provisions. *United States v. Ocampo*, 890 F.2d 1363, 1372 (7th Cir.1989) (citation omitted) (emphasis added). The Seventh Circuit has held that special verdicts are generally disfavored in criminal cases. *United States v. Jackson*, 542 F.2d 403, 412 (7th Cir.1976). Nevertheless they are permitted when the information sought is relevant to the sentence to be imposed. *United States v. Buishas*, 791 F.2d 1310, 1317 (7th Cir.1986) (citing *United States v. Orozco–Prada*, 732 F.2d 1076, 1083–84 (2d Cir.), *cert. denied*, 469 U.S. 845, 105 S.Ct. 154, 83 L.Ed.2d 92 (1984)). *Accord United States v. Barrett*, 870 F.2d 953, 955–56 (3rd Cir.1989) (Stapleton, J. concurring). The jury's special verdict may be a source of guidance in the determination of the sentence.

It is well settled that "a trial judge in the federal system generally has wide discretion in determining what sentence to impose." *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). In making this dis-

cretionary determination "a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *Id.* *United States v. Vega,* 860 F.2d 779, 800 (7th Cir.1988). In this case, as in *Buishas,* the defendants' sentences depended on the amount of cocaine they were distributing. For this reason we find that the trial court's reference to the jury's special verdict determination was proper.

██ Laura Conwell was sentenced for one year as to count 1 and for five years without eligibility for parole as to count 2, to be served concurrently, and to be followed by a supervised release term of four years. Our standard of review of the district court's factual finding at sentencing that each defendant possessed with intent to distribute 500 grams or more of cocaine is one of clear error. *Ocampo,* 890 F.2d at 1372 (citing *United States v. Agyemang,* 876 F.2d 1264, 1271 (7th Cir.1989)).

██ Our examination of the record makes clear that there was sufficient evidence to support a finding of 500 grams of cocaine. Special Agent Hehr, a sixteen-year veteran of narcotics investigation in the Drug Enforcement Administration, offered his expert opinion that the packaging materials found in the garbage searches were wrappers with the imprint of at least four kilo or half-kilo bricks of cocaine and extra materials perhaps used for processing. The jury, weighing his clear and thorough testimony, could reasonably have determined that the packages held 500 grams or more of cocaine before it was repackaged for distribution. Other evidence establishing Conwell's possession of cocaine and participation in the drug distribution include her frequent appearances with McNeese at drug pick-ups, her delivery of 4 ounces of cocaine, the discovery of packaging material and items typically associated with narcotics trafficking, and telephone records and notes at her home.

As the jury resolves all issues of credibility and determines the facts, an appellate court must draw all available inferences in favor of the jury's verdict. *United States*

*v. Ferguson,* 758 F.2d 843, 855 (2d Cir.), *cert. denied,* 474 U.S. 1032, 106 S.Ct. 592, 88 L.Ed.2d 572 (1985). We do not find clear error in the court's factual finding at sentencing; the evidence and the inferences therefrom support the trial court's application of the § 841(b) enhanced penalty. *See Ocampo,* 890 F.2d at 1372–73. *Compare United States v. White,* 888 F.2d 490, 499 (7th Cir.1989) (defendant in possession of 1.88 grams cocaine was sentenced under the Sentencing Guideline Offense level established for 302 grams, the total amount in the cocaine packages when they originally entered the country); *United States v. Wagner,* 884 F.2d 1090, 1098 (8th Cir.1989) (defendants with sufficient chemicals and glassware to produce 3.7 pounds of methamphetamine were sentenced at the level that could have been produced with those materials rather than at the lower amount of product).

Having upheld Conwell's conviction of possession of 500 grams of cocaine with intent to distribute it and the trial court's use of the minimum five-year sentence of § 841(b)(1)(B), we now turn to Conwell's constitutional claim that the mandatory penalty was so disproportionate to the gravity of her crime as to impose cruel and unusual punishment.

It is well settled that a sentence within the range prescribed by statute has never been found to be an eighth amendment violation. *See, e.g., Hutto v. Davis,* 454 U.S. 370, 372, 102 S.Ct. 703, 704, 70 L.Ed.2d 556 (1982); *United States v. Mendoza,* 876 F.2d 639, 640 (8th Cir.1989). This court has consistently found that sentences imposed pursuant to § 841(b) are constitutional and do not violate the prohibition against cruel and unusual punishment. *See United States v. Rose,* 881 F.2d 386, 389 (7th Cir. 1989); *United States v. Bridges,* 760 F.2d 151, 154 (7th Cir.1985). Other circuits concur: *United States v. Colbert,* 894 F.2d 373, 375 (10th Cir.1990); *United States v. Hoyt,* 879 F.2d 505, 512–14, *amended by* 888 F.2d 1257 (9th Cir.1989); *United States v. Mendoza,* 876 F.2d at 641; *United States v. Ramos,* 861 F.2d 228, 232 (9th Cir.1988); *United States v. Brown,* 859

F.2d 974, 976 (D.C.Cir.1988); *United States v. Whitehead*, 849 F.2d 849, 860 (4th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 534, 102 L.Ed.2d 566 (1988); *United States v. Murillo–Guzman*, 845 F.2d 314, 315 (11th Cir.1988); *United States v. Holmes*, 838 F.2d 1175, 1178 (11th Cir.), *cert. denied,* 486 U.S. 1058, 108 S.Ct. 2829, 100 L.Ed.2d 930 (1988).

■ In *Rose* this court upheld the five-year sentence, without possibility of parole, of a defendant convicted of distributing 1 gram of LSD. We conclude now, as we did in *Rose*, that 21 U.S.C. § 841(b)(1)(B) does not violate the eighth amendment prohibition on cruel and unusual punishment. In so doing we note that the legislative history of 21 U.S.C. § 841 leaves no doubt that Congress intended a minimum prison sentence for all first-time offenders of § 841. The statements of then Minority Leader Byrd reflect the intention of Congress concerning the effect of the Anti–Drug Abuse Act of 1986: "[The would-be criminal] must know that no matter how good a lawyer he gets ... that lawyer will not be able to keep him out of jail once he has been found guilty.... [T]he language I originally proposed will require that for certain crimes involving drugs, the convicted defendant must—I repeat must—be sentenced to the penitentiary." 132 Cong.Rec. S14,301 (daily ed. Sept. 30, 1986).

After considering the gravity of the offense of cocaine possession for which Conwell was convicted, in the eyes of Congress as well as the judiciary, we cannot find this sentence especially severe. *See Rose*, 811 F.2d at 389. We therefore find that Conwell's eighth amendment challenge fails.

## VI. *Jury Instruction on Aiding and Abetting*

Appellant Laura Conwell challenges the sufficiency of the district court's jury instruction on aiding and abetting.[10] She also argues that the court erred in refusing to give her tendered instruction requiring proof beyond a reasonable doubt that she knew that McNeese possessed 500 grams of cocaine on the dates alleged.

■ Jury instructions must be reviewed in their entirety and be taken as a whole. "As long as the instructions treat the issues fairly and adequately, they will not be interfered with on appeal." *United States v. Fournier*, 861 F.2d 148, 150 (7th Cir.1988) (quoting *United States v. Perlaza*, 818 F.2d 1354, 1358 (7th Cir.), *cert. denied,* 484 U.S. 861, 108 S.Ct. 176, 98 L.Ed.2d 130 (1987)) (quoting, in turn, *United States v. Patrick*, 542 F.2d 381, 389 (7th Cir.1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977)). The court gave the following instruction:

> Now with respect to those counts [2 and 3], any person who knowingly aids, abets, counsels, commands, induces or procures the commission of a crime is guilty of that crime. However, that person, that is the one who is thought to be an aider or abetter, must knowingly associate himself with the criminal venture, must knowingly participate in it and must knowingly try to make it succeed. Now ... the mere presence at the scene of the crime and knowledge that a crime is being committed is not sufficient to establish that that defendant aided and abetted the crime, unless you find again beyond a reasonable doubt that that defendant was a participant and not merely a knowing spectator.

Transcript at 942–43. This instruction follows the language of Instructions 5.08 and 3.04 of the Federal Criminal Jury Instructions for the Seventh Circuit. The court also defined "knowingly" to mean that the defendant "realized what he or she was doing and was aware of the nature of the conduct and did not act through ignorance, mistake or accident." And it instructed the jury that the defendant is not guilty "unless you find again beyond a reasonable doubt that that defendant knew of the existence of the conspiracy and of the cocaine." This finding may be established

---

10. The statutory provision for aiding and abetting a crime, 18 U.S.C. § 2(a), states that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

from direct or circumstantial evidence, the court advised.

■ It was the eminent jurist Learned Hand who fifty years ago described a person who aids or abets a crime as one who "in some sort associate[s] himself [or herself] with the venture, ... participate[s] in it as in something that he [or she] wishes to bring about, [and] ... seek[s] by his [or her] action to make it succeed." *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938), *quoted in United States v. Weaver*, 882 F.2d 1128, 1135 (7th Cir.), *cert. denied sub nom. Schmanke v. United States,* — U.S. ——, 110 S.Ct. 415, 107 L.Ed.2d 380 (1989). His enunciation has been adopted by all federal appellate courts as the law of aiding and abetting, and was followed in this jury instruction. Following that definition, the essential elements of aiding and abetting require proof of the defendant's (1) association with the unlawful venture, (2) knowing participation in it, and (3) active contribution toward its success. *See Wagner*, 884 F.2d at 1097.

We find that the court's proffered aiding and abetting instruction incorporates every element of the crime of aiding and abetting. When considered along with the other instructions, this instruction treats fairly and adequately the concept of aiding and abetting the possession of cocaine with intent to distribute it. Accordingly, we find no reason to interfere with its presentation by the district court.

■ Nevertheless, Conwell insists that the court's failure to submit her proposed jury instruction number 2 constitutes reversible error. In pertinent part, the defendant's instruction provides:

It is not sufficient for the government to prove the crimes charged in counts II and III of the indictment that the defendant, Laura Conwell, aided and abetted Michael McNeese in the possession of cocaine with intent to distribute. The government must prove beyond a reasonable doubt that Laura Conwell knew that the defendant, Michael McNeese, possessed cocaine in the amounts of 500 grams or more of cocaine on the dates alleged in each of said counts.

■ Recently we have discussed the four-part test that must be met in order that a defendant be entitled to an instruction on his or her theory of defense:

'... the defendant proposed a correct statement of the law; the defendant's theory is supported by the evidence; the defendant's theory of defense is not part of the charge; and the failure to include an instruction on the defendant's theory of defense in the jury charge would deny the defendant a fair trial.'

*United States v. Douglas*, 818 F.2d 1317, 1320–21 (7th Cir.1987), *quoted in United States v. Herrero*, 893 F.2d 1512, 1536 (7th Cir.1990). Because Conwell's counsel did not properly object on the record to the court's refusal to tender that instruction, presenting grounds for the objection, the matter was not properly preserved on appeal under Fed.R.Crim.P. 30. *United States v. Requarth*, 847 F.2d 1249, 1252–53 (7th Cir.1988). Nevertheless, the objection can still be reviewed at the appellate stage under the "plain error" standard of Fed.R. Crim.P. 52. *Requarth*, 847 F.2d at 1254 (citing *Douglas*, 818 F.2d at 1320).

A plain error is one that is "not only palpably wrong but also likely to cause the outcome of the trial to be mistaken." *United States v. Kehm*, 799 F.2d 354, 363 (7th Cir.1986). A reversal on the basis of plain error can be justified "only when the reviewing court is convinced that it is necessary in order to avert an actual miscarriage of justice." *United States v. Silverstein*, 732 F.2d 1338, 1349 (7th Cir.1984), *cert. denied,* 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985).

*Id.* In reviewing for plain error, we again look at the jury instructions as a whole and then determine "whether the instructional mistake had a probable impact on the jury's finding that the defendant was guilty." *Id.* (quoting *United States v. Jackson*, 569 F.2d 1003, 1010 (7th Cir.), *cert. denied,* 437 U.S. 907, 98 S.Ct. 3096, 57 L.Ed.2d 1137 (1978)). If the instructions given by the court adequately covered the essential points of the defendant's proposed instruction, the court's refusal to

include that instruction will not be plain error. *Id.*

Conwell's tendered instruction presented two points: (1) Proof that Conwell aided McNeese in the possession of cocaine with intent to distribute it, as charged in counts 2 and 3 of the indictment, is not sufficient; and (2) the required level of proof needed for conviction is proof that Conwell (the abettor) knew of McNeese's (the principal's) possession of 500 grams or more of cocaine.

This instruction does not comport with the circuit's long-established definition of aiding and abetting: One who participates in a criminal venture and seeks by her actions to make it succeed commits the crime of aiding and abetting. As we have stated in a recent decision, "middlemen aid and abet the *offense* of possession with intent to distribute." *United States v. Wesson,* 889 F.2d 134, 135 (7th Cir.1989) (emphasis added).

> Aiding and abetting is nothing if not a crime you may commit without performing all of the elements of the substantive offense.... You may "abet" the crime of possession with intent to distribute by procuring the customers and maintaining the market in which the possession is profitable, even though you do nothing else to help the possessor get or retain possession.

*Id.*

*Wesson*'s holding makes clear that the defendant's instruction is simply wrong: It *is* sufficient for the government to prove that the defendant/"middleman"/abettor aided the other defendant/"possessor"/principal in the offense of possession with intent to distribute. For a conviction of aiding and abetting, the government is not required to prove either that Conwell herself had actual or constructive possession of cocaine, as *Wesson* holds, or that she knew of the co-conspirator's actual possession of a specific quantity of cocaine, as we now hold. All that is required is that Conwell's association with the illegal drug distribution plan and her actions when participating in the scheme were intended to make the criminal venture succeed. The

court's instruction makes that requirement clear; Conwell's proffered instruction misstates both the sufficiency and quantum of proof required to be made.

Because the defendant did not propose a correct statement of the law in her instruction, she failed to meet the first prong that would entitle her to presentation of this jury instruction. As a consequence, we find no mistake, and certainly no plain error, in the court's refusal to offer her instruction. Furthermore, the court's jury instructions, viewed as a whole, fully and fairly covered the essential elements of the concept of aiding and abetting, properly integrated that instruction with other relevant definitions and with the instructions concerning the substantive crime of possession, and presented the law to the jury in an intelligible manner. *See United States v. Troop,* 890 F.2d 1393, 1399 (7th Cir. 1989). We conclude that the instruction given by the trial judge was adequate to instruct the jury on the charge of aiding and abetting.

### *Conclusion*

After a complete review of the record, and after consideration of the arguments presented by defendants and the government, we reach the following conclusions:

1. Because the magistrate had a substantial basis for concluding that probable cause existed, the district court's denial of the defendants' motion to suppress evidence was not clearly erroneous.

2. The district court did not abuse its discretion in admitting evidence of the shooting of informant Stauss by co-conspirator Chase.

3. A measurable amount of cocaine is sufficient to support a conviction for possession of a controlled substance; therefore the convictions of these defendants will not be reversed for insufficient quantity of the narcotic.

4. Finding that the reference to § 846 was surplusage, we affirm the district court's granting of the government's postverdict motion for striking of the citation.

**610**

5. The imposition of a mandatory five-year prison sentence upon defendant Conwell does not constitute a violation of the eighth amendment prohibition of cruel and unusual punishment.

6. Because defendant Conwell's proposed jury instruction on aiding and abetting was not a correct statement of the law, the district court properly refused to tender it to the jury. In reviewing the court's jury instructions as a whole, we uphold the instruction tendered by the court as one which adequately and fully covered the essential elements of aiding and abetting.

In sum, the convictions of defendants McNeese and Conwell are hereby AF-FIRMED.