**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Phillip Allen FIELD,**
**Defendant–Appellant.**

No. 87–3152.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 19, 1988.

Decided May 17, 1989.

Rehearing Denied July 25, 1989.

Mark S. Lenyo, South Bend, Ind., for defendant-appellant.

Clifford Johnson, Asst. U.S. Atty., South Bend, Ind., for plaintiff-appellee.

Before POSNER, RIPPLE and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Defendant Phillip Allen Field appeals his conviction of 292 counts of altering postal money orders. For the reasons discussed below, we affirm.

## I.   Facts

Defendant-appellant Phillip Allen Field was an inmate at the Indiana State Prison. He was charged with 298 counts of altering United States postal money orders and

with one count of possession of an altered postal money order. Six counts of the alteration charges were dismissed before trial. At trial, the Government presented testimony of postal inspectors to the effect that Field's fingerprints were on all but one of the altered money orders, that he had touched them almost exclusively on the face, and that many of the fingerprints were near the amount line. There also was testimony that the amount of all the money orders had been raised or altered from higher amounts. Three former inmates of the Indiana State Prison also testified for the Government. Two of the three inmates, one in greater detail than the other, testified as to the defendant's method of altering the money orders. One of the inmates testified that he received a card from the defendant containing three altered money orders, and another testified that he delivered nineteen money orders to the defendant and received them back with the dollar amounts altered. The latter witness identified these nineteen money orders at trial.

The Government also filed two motions at trial to amend typographical errors in the indictment. The first of these motions, which we do not discuss further, was to amend the serial numbers set out in three of the counts of the indictment. The second motion, which was granted over the defendant's objection, was to amend the serial numbers of each money order named in the indictment. This proposed amendment was to add an eleventh digit to each of the serial numbers. This eleventh digit was, according to the testimony of one of the postal inspectors, an internal control number used to guarantee the validity of the document. Only the first ten digits were used to put the money orders in actual sequence. The original omission by the Government of the eleventh digit in the indictment occurred as the result of relying upon a computer print-out in its drafting of the indictment. As the Government pointed out, a xerox copy of each money order was given to the grand jury before it returned the indictment. In granting the Government's motion to amend, the court said:

I do think that the serial number is a matter in substance.... I do think that the grand jury could have indicted Mr. Field without including reference to the serial numbers of the money orders, and the serial numbers then would have had to have been provided through [the] bill of particulars because they would not have had to have been included in the indictment to begin with. I think it's a matter of substance rather than form. Accordingly, I think the government can amend. I see no reason to attempt to characterize the error to be amended as typographical or some other form of error....

I'm not sure we can call the omission of the eleventh digit typographical. But I don't think that affects whether it's a matter of form or substance and, hence, I don't believe it affects whether the government can amend.

The Government also introduced in evidence items obtained from a search of Field's cell seven and one-half months after he was indicted. The search was carried out while Field was in disciplinary segregation. As a result of this search, nineteen items, including sandpaper, exacto knives, liquid paper, colored pencils, and other similar supplies were confiscated. One of the items, the introduction into evidence of which the defendant strongly contests on appeal, was a pair of rubber gloves with computerized ink blots in $500.00 denominations and the purported serial number of a money order on them. The money order itself was not introduced in evidence.

Field was convicted of all the alteration counts, but acquitted on the possession count. He presents three arguments on appeal. First, Field argues that the district court erred in permitting the amendment of the serial numbers of the money orders alleged in the indictment. Second, Field argues that the district court erred in admitting into evidence the items found in the search of Field's cell. Finally, Field contests the sufficiency of the evidence to convict him. We will discuss these three arguments in turn.

## II. Discussion

### A. *Amendment of the Indictment*

Field argues that the district court erred in granting the Government's motion to amend the indictment to include the eleventh digit of the serial number of each money order that Field allegedly possessed or altered. He argues that the district court's grant of the Government's motion violated his rights under the presentment and double jeopardy clauses of the Constitution. We disagree.

In certain circumstances, the district court commits reversible error when it allows an indictment to be amended at trial. *United States v. Galiffa*, 734 F.2d 306, 311 (7th Cir.1984), *cert. denied*, 474 U.S. 1032, 106 S.Ct. 592, 88 L.Ed.2d 572 (1985). Only a grand jury, and not a trial court, can materially amend a criminal indictment. *United States v. Nicosia*, 638 F.2d 970, 976 (7th Cir.1980), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981). The purpose of the presentment clause in this respect is twofold. First, it entitles a defendant to be in jeopardy only for offenses charged by a group of his fellow citizens acting independently of either the prosecutor or the judge. *Stirone v. United States*, 361 U.S. 212, 217–19, 80 S.Ct. 270, 273–74, 4 L.Ed.2d 252 (1960). Second, it entitles a defendant to be apprised of the charges against him, so that he knows what he must meet at trial. *Hagner v. United States*, 285 U.S. 427, 431, 52 S.Ct. 417, 419, 76 L.Ed. 861 (1932). Likewise, an indictment is insufficient if it does not "[show] with accuracy to what extent [the defendant] may plead a former acquittal or conviction," *Hagner*, 285 U.S. at 431, 52 S.Ct. at 419, or if it does not protect the defendant against another prosecution for the same offense. *Cf. United States v. Cina*, 699 F.2d 853, 857 (7th Cir.), *cert. denied*, 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983) (variance between pleading and proof is not "material" or "substantial" if it does not go against the defendant's rightful expectation that he not be twice prosecuted for the same offense).

Judicial amendments of an indictment, however, are permitted as to matters of form or surplusage. *United States v. Muelbl*, 739 F.2d 1175, 1179 (7th Cir.1984), *cert. denied*, 469 U.S. 982, 105 S.Ct. 388, 83 L.Ed.2d 322 (1984). In general, amendments to an indictment will be allowed to stand if they do not "change an 'essential' or 'material' element of the indictment so as to cause prejudice to the defendant." *Cina*, 699 F.2d at 857 (citations omitted). This includes the "correction of obvious clerical or typographical errors in the indictment." *United States v. Skelley*, 501 F.2d 447, 453 (7th Cir.), *cert. denied*, 419 U.S. 1051, 95 S.Ct. 629, 42 L.Ed.2d 647 (1974). In *Skelley*, this court upheld the district court's grant of the Government's motion to strike the incorrect fictitious serial numbers of counterfeit bills alleged in the indictment in that case. In that case, we said:

> While the exceptions do not completely engulf the rule, we are not prepared to make a fetish of the prohibition against amendments of an indictment by holding that it is reversible error to interlineate fictitious serial numbers which are inaccurate solely because of the transposition of two digits in a ten digit string, which could have been omitted entirely from the indictment with no consequence, which need not be proved even if alleged, which the jury could have been instructed to ignore, *which might have been corrected as typographical errors*, ...

*Skelley*, 501 F.2d at 453 (emphasis supplied).

Defendant argues, to no avail, that *Skelley* is distinguishable from this case because, since the serial numbers in that case were fictitious, they did not serve to identify a specific offense charged in the indictment. Field maintains that if the serial number of each money order was not included in the indictment, he would not have been adequately apprised of the charges against him, and also would have been prevented from effectively pleading double jeopardy to subsequent prosecutions involving those money orders.

We think, however, that *Skelley* controls the disposition of this case. The amendment to the indictment in this case corrected a typographical or clerical error. In other words, this amendment went to the form, and not to the substance of the indictment. *United States v. Neff*, 525 F.2d 361, 363 (8th Cir.1975) (trial court's amendment of the serial number of a weapon alleged in the indictment was permissible, because this was a correction of a typographical error going to form, and not to substance); *see also United States v. Bush*, 659 F.2d 163, 165–67 (D.C.Cir.1981) (amendment of indictment during trial to correct form number alleged in the indictment was permissible).

We need not decide whether or not it was necessary to allege the particular serial numbers in the indictment, because even if it was, the defendant was not prejudiced by the amendment here. In this case, there was testimony to the effect that the eleventh digit was not necessary to put the money orders in actual sequence. Moreover, the grand jury had a xerox copy of each money order before it returned the indictment. Finally, defense counsel itself received a copy of these money orders during the course of discovery. Thus, we do not think that the defendant was prejudiced in any way by this amendment. *Bush*, 659 F.2d at 167 (correct form number appeared on at least one of the copies of the form supplied to defendant's counsel during discovery, and there was no suggestion in the record that the defendant was misled by the error in the indictment). In short, we do not think that the district court erred in this case in permitting the amendment of the indictment.

### B. *Items Found in Field's Cell*

Defendant Field next argues on appeal that the district court erred in permitting the introduction into evidence of the items found in Field's cell. The bulk of his argument is that these items were inadmissible as "other crimes" evidence under Rule 404(b) of the Federal Rules of Evidence. As the Government points out, however, Field did not object to introduction of this evidence on Rule 404(b) grounds at trial. He only objected to introduction of this evidence on grounds of relevancy and remoteness, the grounds the court considered in deciding whether this evidence was admissible. Rule 103(a)(1) of the Federal Rules of Evidence provides that error may not be predicated upon a ruling admitting evidence unless "a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context." Neither a general objection to the evidence nor a specific objection on other grounds will preserve the issue on review. *United States v. Wynn*, 845 F.2d 1439, 1442 (7th Cir.1988) *and cases cited therein; United States v. Laughlin*, 772 F.2d 1382, 1392 (7th Cir.1985) (defendant's objection that certain photographs were not relevant, or alternatively were more prejudicial than probative, did not preserve Rule 404(b) objection).

Here, the closest possible objection to a Rule 404(b) objection was as follows:

First of all, this particular search of Mr. Field's cell took place in April of 1985. Mr. Field is charged with altering money orders from the period of April 12th, 1982, through, I believe it's, September of 1984. This particular search of his cell took place some seven months after the last money order which he's been charged with altering. I think the prosecution is trying to use subsequent acts to establish that [Field] committed the offenses ... charged in the indictment.

It is not apparent from the context in which this objection was made that it was a Rule 404(b) objection. It fairly can be read as an objection to admission of the evidence on remoteness grounds. The Government responded to the objection on that basis, and the district court made its ruling as if the only grounds of objection were relevancy and remoteness.

Because Field did not raise an objection under Rule 404(b) at trial, he is precluded from raising such an argument on appeal absent a showing of plain error. *See, e.g.*, Fed.R.Evid. 103(a)(1), 103(d); Fed.R.Crim.P. 52(b); *Wynn*, 845 F.2d at 1442;

*Laughlin,* 772 F.2d at 1392. In order for plain error to exist, there must have been a "miscarriage of justice," which "implies the conviction of one who but for the error probably would have been acquitted." *United States v. Smith,* 869 F.2d 348, 356 (7th Cir.1989) (quoting *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985); *United States v. Silverstein,* 732 F.2d 1338, 1349 (7th Cir.1984), *cert. denied,* 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985)); *Wynn,* 845 F.2d at 1442–43. As we discuss below, there was sufficient evidence, even without admission of these items, to convict Field. Hence, no plain error occurred here, and thus Field cannot raise the Rule 404(b) argument on appeal.

■ In addition, we agree with the Government that this evidence was admissible under Rules 401 and 403 of the Federal Rules of Evidence, the grounds upon which Field did object at trial. We think that the district court was correct in ruling that the items found in Field's cell were relevant to show that he was involved with the alteration of money orders during the time period alleged in the indictment.[1] We agree with the Government that these items were admissible to show Field's likely involvement with the alteration of money orders. These items included sandpaper, a stone block the approximate size of a postal money order, exacto knives, templates, yellow pencils, the rubber gloves with ink blots on them, liquid paper, artist pens, and a pair of shoes with secret compartments. In combination with the testimony at trial of Field's former inmates as to his method of altering the money orders,[2] we think that all of these items would be useful in the alteration of money orders, and in the subsequent concealment thereof.

In analogous cases, this circuit has held weapons admissible in evidence in narcotics cases as "tools of the trade." Other circuits have adopted the "tools of the trade" rationale as well. *See, e.g., United States v. Alvarez,* 860 F.2d 801, 829 n. 29 (7th Cir.1988), *on reh'g,* 868 F.2d 201 (7th Cir. 1989) (collecting cases). Although we are not in a position to decide whether the items found in Field's cell would constitute "tools of the trade" in every money order alteration case, we think that, especially given testimony by inmates as to Field's methodology, this evidence was relevant here. *United States v. Miroff,* 606 F.2d 777, 781 (7th Cir.1979), *cert. denied,* 445 U.S. 928, 100 S.Ct. 1315, 63 L.Ed.2d 761 (1980) (although declining to adopt a "tools of the trade" rationale with respect to introduction of weapons in a trial for conspiracy to transport stolen property, the court of appeals nonetheless found that this evidence was relevant in that case).

■ Field also was not unduly prejudiced by the admission of this evidence. Whether the probative value of evidence is outweighed by the prejudice thereof is a matter left to the sound discretion of the trial court, *United States v. Byrd,* 771 F.2d 215, 220 (7th Cir.1985), and we will not reverse the court's determination absent a showing of abuse of that discretion. *Alvarez,* 860 F.2d at 830. The defendant has not made such a showing here. Moreover, any prejudicial effect created by the introduction of such evidence is limited by the district court's instruction to the jury that

---

1. In addition, the district court instructed the jury that they could consider this evidence only on the question of the defendant's capacity to commit the offenses charged (Jury Instruction No. 22).

2. Clinton Cole testified at trial that he would stand guard and watch Field alter the money orders he had brought. First, Field would use a razor blade to scratch out the asterisks on the hundreds and tens places on the money order. He would then trace a number from another part of the money order, and move the paper to the hundreds or tens place, where he would go over the tracing using a piece of carbon paper.

Field would then darken the numbers on the money order with a medium felt tip pen, and correct any stray marks with a pencil the same color as the money order background, and dust baby powder over the money order so the numbers would not shine or look new. During the alteration process, Field would hold down the money order with his fingers against a pad on his desk. At times, he would hold the money order down with his hand to keep it from moving. Duane Hayes testified at trial that Field told him he used a typewriter for rolling out the money orders, a sand color Prisma pencil, and spirit remover.

the items found in Field's cell only could be considered by the jury on the question of his capacity to commit the offenses charged.[3] *United States v. Cresta,* 825 F.2d 538, 554 (1st Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 2033, 100 L.Ed.2d 618 (1988) (holding that limiting instruction in "tools of the trade" case properly protected the defendants from undue prejudice).

The fact that Field's cell was searched seven and one-half months after he was indicted, during a time when other inmates might have had access to the cell, moreover, does not mean that the items found in Field's cell were improperly admitted. A district court's decision to admit or exclude evidence on remoteness grounds only will be reversed for an abuse of discretion. *Cf. United States v. Amaro,* 816 F.2d 284, 287 (7th Cir.), *cert. denied,* 481 U.S. 1031, 107 S.Ct. 1961, 95 L.Ed.2d 532 (1987). We do not think that, under these specific circumstances, the district court abused its discretion here. *See, e.g., United States v. Gordon,* 548 F.2d 743, 744 (8th Cir.1977) (where defendant podiatrist charged with making false statements for the purpose of obtaining Medicare payments claimed to have performed excision and removal of toenails, and evidence established that a toenail takes eighteen to twenty months or longer to grow back, photographs of feet of alleged patients taken four to six months after alleged excision and removal were relevant to corroborate a witness's testimony). As the district court pointed out, moreover, the remoteness issue in this case goes more to the weight to be given to the evidence, and not to its admissibility.

## C. *Sufficiency of the Evidence*

Finally, Field argues that there was insufficient evidence to convict him of 271 of the 292 alteration counts. Field argues that only with respect to 21 of the alteration counts in the indictment did the Government provide sufficient "tie-up" evidence—that is, evidence specifically linking the defendant to alteration of those particular money orders. With respect to 19 of these 21 money orders, "tie-up" evidence was provided by the testimony of Calvin Hedges. Hedges, a fellow inmate of Field at the Indiana State Prison, testified that he personally delivered these money orders to the defendant for purposes of having them altered, and that he thereafter received them from Field in an altered condition. With respect to the other two money orders for which Field claims the Government provided "tie-up" evidence, this evidence was provided by the testimony of Duane Hayes. At trial, Hayes testified that defendant sent him a card containing altered money orders.[4]

Field argues that with respect to the remaining 271 money orders, all that the Government could prove as to them was that Field had touched these money orders (because his fingerprints had appeared on them) and that he was an alterer of money orders. This case, Field argues, is similar to *United States v. Lonsdale,* 577 F.2d 923 (5th Cir.1978). In *Lonsdale,* the defendant was charged with unlawful utterance of a Treasury check. The Fifth Circuit noted that "the only truly damning evidence introduced by the Government was, therefore, Lonsdale's fingerprint on the check," *id.* at 926. The court further noted that there was no evidence, either direct or circumstantial, indicating that Lonsdale had handled the check in the course of committing the charged offense. *Id.* at 926–27. This case, Field argues, is similar to *Lonsdale* in that there only was evidence that Field's fingerprints were on the money or-

---

3. *See supra* note 1.

4. Field claims that Hayes testified that Field only sent him two money orders, those alleged in counts 288 and 289 of the indictment. Our reading of the transcript, however, indicates that Field actually sent Hayes *three* money orders—those alleged in counts 288, 289 and 290 of the indictment—in that card. Field offers no explanation as to why Hayes' testimony does not provide "tie-up" evidence as to this third money order. Because we think that there was sufficient evidence to support Field's conviction of all the alteration counts, however, whether Hayes' testimony provided "tie-up" evidence as to two or three money orders, however, is irrelevant.

ders, and no evidence that he touched the 271 money orders in question in the course of altering them.

We disagree. First, we note that we are bound to affirm the verdict if the evidence, when viewed in the light most favorable to the Government, establishes that any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also United States v. Muskovsky*, 863 F.2d 1319, 1322 (7th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 1345, 103 L.Ed.2d 813 (1989); *United States v. Spivey*, 859 F.2d 461, 463 (7th Cir.1988); *United States v. Leibowitz*, 857 F.2d 373, 380 (7th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 1552, 103 L.Ed.2d 855 (1989). In this case, we do not believe that the evidence falls short of this standard.

Unlike *Lonsdale*, this is not a "fingerprints only" case. It is true that the Government did not show that the 271 disputed money orders could not have been handled by Field at some time before or after they were altered. As in *United States v. Bush*, 749 F.2d 1227, 1229 (7th Cir.1984), *cert. denied*, 470 U.S. 1058, 105 S.Ct. 1771, 84 L.Ed.2d 831 (1985), "enough [evidence] was shown so that the mere possibility does not compel, as matter of law, a reasonable doubt." In this case, there was plenty of evidence from which the jury could infer that Field's fingerprints were placed upon the remaining 271 money orders during the course of his altering of them.

First, as discussed above, the items found in the search of Field's cell show that he had the capacity to alter these money orders. Second, the testimony of Clinton Cole provided direct evidence of Field's normal practice in altering money orders. During this practice, Field would place his hands on top of the money order and hold the corner of it down during the altering process. The testimony of Duane Hayes discussed this process to a lesser extent, and established that Hayes corresponded with Field concerning the passing of altered money orders, their purchase,

and their smuggling into the prison. There also was testimony from Calvin Hedges to the effect that the defendant was the best in the prison when it came to altering money orders. Finally, the testimony of Robert Hostick, the Government's latent fingerprint examiner, identified 452 fingerprints and 47 palm prints on the money orders. Only five of these money orders, moreover, were found to have fingerprints on the back alone, and many of the fingerprints were found near the amount line. We think that from all of this evidence, the jury reasonably could infer that Field touched these money orders in the course of illegally altering them.

### III. Conclusion

For the reasons discussed above, we AFFIRM the judgment of the district court.