908 F.2d 975
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Jimmy ALEXANDER, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human
Services, Defendant-Appellee.
 No. 89-2708.
 United States Court of Appeals, Seventh Circuit.
 Submitted June 28, 1990.*
Decided July 24, 1990.
 
 Before POSNER, MANION and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Jimmy Alexander suffers from schizophrenia, alcoholism and organic brain syndrome. On February 25, 1988 an administrative law judge of the Social Security Administration found that these problems were not severe enough to meet the listings of impairments of 20 C.F.R. Appendix 1, Subpart P, Regulations No. 4, but that Alexander nonetheless lacked the residual functional capacity to perform any productive work. The ALJ held that Alexander's slow pace and lack of energy precluded any gainful employment. Alexander was therefore found to be totally disabled within the meaning of the Social Security Act and entitled to benefits. The issue in this case is the date on which Alexander became totally disabled. Alexander's insured status under Title II of the Act expired on December 31, 1982. Alexander claimed to be disabled as of May 1981; the ALJ found that he became disabled only in June of 1984. Thus Alexander was granted supplemental security income benefits but denied disability insurance benefits. Alexander appealed the decision as to the onset date to the Appeals Council and to the district court without success. This appeal followed.
 
 
 2
 Alexander was admitted to the Tinley Park (Illinois) Mental Health Center on six occasions between 1970 and 1979. The stays ranged in duration from two days to almost four weeks. Alexander was diagnosed as suffering from schizophrenia with psychotic episodes, alcoholism, and finally organic brain syndrome related to excessive drinking. He was released each time with instructions to take medications including Thorazine, Haldol, Stelazine, Prolixin and Progentin, and his prognosis was listed as guarded. During this time Alexander was regularly employed as a metalworker and as a janitor.
 
 
 3
 This brings us to the point at which Alexander claims he became totally disabled by his mental and emotional disorders. On May 29, 1981, when employed as a janitor at a local Zayre department store, Alexander was delivered to Tinley Park by the Cook County sheriff by order of the state court. Alexander had been arrested for trespass and disorderly conduct and found in need of hospitalization. Alexander was again diagnosed as schizophrenic and was held until June 23, 1981. On discharge he was prescribed Haldol in lieu of his former medications, which he had long since ceased to take regularly. He was also told to visit Dr. Ji J. Shin on a monthly basis.
 
 
 4
 Dr. Shin wrote a report on Alexander's condition for the social security disability determination authorities in September 1981.[1] Dr. Shin noted that Alexander could continue his work at Zayre "when stable" and that he was "able to function independently when not drinking." He stated that "lack of stability and predictability interfere with holding [a] job long term." He also opined that Alexander could manage his own money.
 
 
 5
 Alexander also submitted to a consultative examination by Dr. David S. Benson during the same month. Dr. Benson reported that Alexander suffered from schizophrenia, chronic type in remission. The prognosis was "guarded to fair." He concluded, "[Alexander] is able to perform simple, routine, repetitive activities. Based on his presentation today and on the standards of the disability program, he is considered mentally able to tolerate the pressure of simple, unskilled work and to achieve its production requirements. He would be able to socialize adequately with a supervisor and co-workers. He is able to manage any benefits that might be granted him." Dr. Benson reached the same conclusion after seeing Alexander a second time on December 28, 1981.
 
 
 6
 The record contains no more medical evidence until the time of Alexander's last hospitalization, which began on June 29, 1984 when Alexander was arrested for rape. He remained at Tinley Park until August 3, 1984. Where in the past Alexander had shown quick improvement during hospitalization when put on medication, this time he exhibited bizarre behavior to the end of his stay, when he was returned to jail.
 
 
 7
 Dr. Shin examined Alexander again on October 25, 1984. Dr. Shin reported, in contrast to his 1981 report, that he was unsure of Alexander's capacity to handle his own money. Alexander was also seen again by Dr. Benson. Dr. Benson's diagnosis was once again chronic schizophrenia in partial remission, but the prognosis had changed from "guarded" to "poor." Dr. Benson remarked that Alexander "appears to have a chronic relapsing schizophrenic illness that has left him rather deteriorated. Currently, he is not psychotic, but remission seems to be tenuous with marked personality deterioration." Dr. Benson, like Dr. Shin, changed his opinion as to Alexander's ability to handle his own money.
 
 
 8
 Based upon this medical evidence, on some later medical reports not relevant to this appeal, and on oral testimony at the hearing, the administrative law judge determined that Alexander did not become totally disabled until 1984.[2] Alexander must show that the onset date chosen by the ALJ is not supported by substantial evidence if we are to reverse that determination. Pugh v. Bowen, 870 F.2d 1271, 1278-79 (7th Cir.1989). It is not enough for him to show merely that an earlier date could have been supported. Id. Thus, Alexander must show that the evidence taken as a whole could not lead a reasonable mind to the conclusion that he did not become totally disabled before May 1984. Given the reports of 1981 from Dr. Shin and Dr. Benson, this is extremely difficult. Dr. Shin reported that, although Alexander was not always stable, he did have the mental capacity to work when he was stable. Dr. Benson reported that Alexander was able to follow simple instructions and had the capacity to behave appropriately towards co-workers and supervisors.
 
 
 9
 Alexander begins by attacking Dr. Benson's 1981 reports. He argues that Dr. Benson's report was made within the framework of the Social Security Administration's then-current policy of finding claimants to have sufficient residual mental functional capacity to work if their impairments were not severe enough to meet the listings of 20 C.F.R. Appendix 1, Subpart P, Regulations No. 4. This policy was found to be improper and was enjoined in Mental Health Ass'n of Minn. v. Schweiker, 554 F.Supp. 157 (D.Minn.1982), aff'd, 720 F.2d 965 (8th Cir.1983). See also City of New York v. Heckler, 578 F.Supp. 1109 (E.D.N.Y.), aff'd, 742 F.2d 729 (2d Cir.1984), aff'd sub nom. Bowen v. City of New York, 476 U.S. 467 (1986). According to Alexander, the fact that the Social Security Administration used that discredited policy at that time somehow tainted Dr. Benson's reports, and it was improper for the ALJ to rely on them. Whatever the merits of this argument may be, we will not consider them because the argument is raised for the first time in this court. Compare United States v. Field, 875 F.2d 130, 134 (7th Cir.1989) (objection to admission of evidence on one ground does not preserve for appeal any other reasons for exclusion of the evidence).
 
 
 10
 Alexander also argues that the ALJ could not reasonably find that he had the residual functional capacity to work in 1981. In Alexander's view, the record of repeated hospitalizations showed that he was unable to keep a normal schedule as any employer would demand. But Alexander was in fact employed almost continuously until his 1981 hospitalization--he was credited for eleven quarters of work during the preceding three years. The ALJ could reasonably find that absence due to hospitalization or what Dr. Shin called "instability" was not a totally disabling problem beginning in 1981, especially in light of the fact that Alexander was not hospitalized again until 1984. Although Alexander argues that the ALJ concentrated on isolated instances to support his finding that Alexander was not disabled in 1981, it appears that he would simply have us concentrate on a different set of isolated instances. Instead of looking at how Alexander might have acted in the workplace on a day-to-day basis in 1981, he asks us to focus on the effect of his isolated psychotic episodes. The ALJ's approach was not any less reasonable than Alexander's.
 
 
 11
 The ALJ could compare the reports of Dr. Shin and Dr. Benson from 1981 with those of 1984 to conclude that Alexander's condition was significantly worse in 1984, and even that Alexander had crossed the line from not totally disabled to totally disabled. This conclusion was reinforced by a comparison of Alexander's course during his hospital stay in 1981 with that of 1984. In 1981, Alexander's behavior returned more or less to normal; in 1984 a hospitalization of greater length produced no such result. As the district court held, the ALJ's choice of onset date is supported by substantial evidence in the record. The decision of the district court is therefore
 
 
 12
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal is submitted on the briefs and record
 
 
 [1]
 Alexander's first application for social security benefits, filed August 6, 1981, was denied. It was never presented to an administrative law judge
 
 
 [2]
 Although the ALJ did not mention SSR 83-20 in his decision, it appears that the ALJ did follow that ruling's analysis for determining onset date of a disability. The ALJ considered Alexander's allegation that the disability began in May 1981, Alexander's work record and the medical evidence. Failure to mention SSR 83-20 is not fatal if the proper analysis was made. Pugh v. Bowen, 870 F.2d 1271, 1274 (7th Cir.1989)