919 F.2d 734
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Keith Montez ROBINSON, a/k/a Kiwi, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Terry Leon ALLRED, Defendant-Appellant.
 Nos. 89-5246, 90-5455.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 4, 1990.
Decided Dec. 10, 1990.
As Amended Jan. 23, 1991.
 
 Appeals from the United States District Court for the Middle District of North Carolina, at Greensboro. Richard C. Erwin, Chief District Judge. (CR-89-122-02-G)
 Susan Hayes, Greensboro, N.C. (Argued), for appellant Robinson; E. Raymond Alexander, Jr., Greensboro, N.C., on brief.
 William Carlton Ingram, Jr., Floyd, Greeson, Allen & Jacobs, Greensboro, N.C., for appellant Allred.
 Richard Stanley Glaser, Jr., Assistant United States Attorney, Greensboro, N.C. (argued), for appellee; Robert H. Edmunds, Jr., United States Attorney, Greensboro, N.C., on brief.
 M.D.N.C.
 AFFIRMED.
 Before WIDENER, WILKINS and NIEMEYER, Circuit Judges.
 PER CURIAM:
 
 
 1
 Keith Robinson and Terry Allred were convicted, in separate trials, of possession with intent to distribute a large quantity of crack cocaine in violation of 21 U.S.C. Sec. 841(a)(1) and conspiracy in violation of 21 U.S.C. Sec. 846. The offenses arose out of the same events that occurred on May 23 and 24, 1989. Robinson was sentenced to imprisonment for 230 months and Allred for life.
 
 
 2
 On appeal Robinson contends the evidence in his trial was insufficient to support the guilty verdict. Allred contends that he was denied a fair trial on the ground that the trial judge improperly questioned a key government witness. In a supplemental brief, Allred, without the benefit of counsel, contends additionally that his Fourth Amendment rights were violated and the evidence was insufficient to support the guilty verdict. For the reasons given, both convictions will be affirmed.
 
 I.
 
 3
 At Robinson's trial, evidence was presented that on May 23, 1989, Robinson, Allred, and Monica Warner traveled by bus from Greensboro, North Carolina, to New York City. Warner testified that Allred had asked her to travel to New York with him and that if she did he would take her shopping. Robinson told a DEA agent, after his arrest, that Allred asked him to go to New York to get some cocaine and that Allred needed Robinson basically to show him the directions. Allred agreed to pay Robinson $500 for accompanying him. Robinson also confessed to the DEA agent that he was actually involved in the purchase of the drugs in New York and that Allred had asked Warner to come to New York so that Allred could put cocaine in Warner's bag without her knowledge or consent.
 
 
 4
 On the return trip from New York on May 24, 1989, shortly before arriving at the Greensboro bus station, Robinson asked the bus driver, at the behest of Allred, to let the three off at Lee Street, which was an unscheduled stop. As the three disembarked and began to walk into an empty lot, three DEA agents who had been watching the location approached the defendants and Warner to see if they had illegal drugs. When Allred spotted the agents, he said to Warner, "Run, Monica, run." When Warner was stopped and searched pursuant to her consent, the DEA agents found 156.2 grams of crack cocaine in her denim bag. She denied knowing of the presence of the crack and where it came from. She did testify at trial, however, that there were several occasions when Robinson and Allred had access to the denim bag while they were in New York and thereafter.
 
 
 5
 In resolving whether the evidence was sufficient to convict Robinson beyond a reasonable doubt, the court has to determine whether any rational trier of facts could have found Robinson guilty beyond a reasonable doubt when the evidence is viewed in a light most favorable to the government. United States v. Jackson, 863 F.2d 1168, 1173 (4th Cir.1989).
 
 
 6
 The admissions made by Robinson to Agent Kowalski alone, some of which have since been corroborated, were sufficient to justify conviction under this standard. According to Kowalski, Robinson admitted assisting Allred in going to New York and purchasing cocaine for which Robinson would receive $500 in payment. Robinson also knew that Warner was brought along as a courier. He also admitted that he was with Allred when the cocaine was bought from a "red-haired Puerto Rican up on Amsterdam and 146th Streets." When this and the other evidence presented at trial is viewed in a light most favorable to the government, it is apparent that a rational trier of facts could have found Robinson guilty beyond a reasonable doubt.
 
 II.
 
 7
 Allred contends that he was denied a fair trial because the district court's questioning of Warner during his trial indicated to the jury that the court did not believe Allred's explanation of the purpose of the trip to New York. The district court questioned Warner as follows:
 
 
 8
 Q (by the court): Let me ask you, when Mr. Allred said, "Run, Monica, run," did he run?
 
 
 9
 A (by Warner): No, sir.
 
 
 10
 Q: He did not. Why did you go to New York with Mr. Allred?
 
 
 11
 A: He asked me to go. I mean, I know him. It's not like I didn't know him. He was a friend of mine. He asked me to do and he told me he would take me, and take me shopping, so I went. I knew him.
 
 
 12
 Q: Well, you know other people, do you not?
 
 
 13
 A: Right.
 
 
 14
 Q: Have you had other people to say, "Come and let's go to New York" and take you shopping?
 
 
 15
 A: No, not like that, no, sir.
 
 
 16
 Q: And you don't know why he wanted to take you to New York and take you shopping?
 
 
 17
 A: Well, I didn't think he had no personal reason but, you know, we were just friends. I'm not a bad-type person, so I felt like, you know, maybe he was asking me to go because he knowed, you know, we probably would have a nice time together.
 
 
 18
 Q: And when you went to New York, you didn't buy anything significant, did you?
 
 
 19
 A: I didn't get anything significant.
 
 
 20
 Q: Did you see anything that was purchased that could not have been purchased in Greensboro?
 
 
 21
 A: No, I didn't.
 
 
 22
 Q (to counsel): Any questions by reason of my questions?
 
 
 23
 Joint Appendix at 201-02. Although Allred's attorney did not object to the court's questioning, he now argues that such zealous questioning in a short trial tainted the entire process because it created an appearance of partiality by the district court in favor of the government. He argues that any objection he could have made would only have highlighted the prejudice to the jury and would have worsened an already bad situation. He fails to address, however, the other possible methods of objecting, such as at the bench outside the presence of the jury or by a motion for a mistrial.
 
 
 24
 The district court has wide latitude to pose questions to develop facts and "it is no ground of complaint that the facts so developed may hurt or help one side or the other." United States v. Parodi, 703 F.2d 768, 775 (4th Cir.1983) (quoting Simon v. United States, 123 F.2d 80, 83 (4th Cir.), cert. denied, 314 U.S. 694 (1941)). If a party wishes to object to the questions posed by the court, a timely objection or motion to strike must appear of record. Fed.R.Evid. 103(a). By failing to object, a party waives the objection unless "plain error" occurred affecting substantial rights of the party. Fed.R.Evid. 103(d). Plain error is that which "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings," and a finding of plain error should be made only "in those circumstances in which a miscarriage of justice would otherwise result." United States v. Young, 470 U.S. 1, 15 (1985).
 
 
 25
 In determining whether a trial judge's questioning of a witness reached such a level of prejudice as to deny the defendant a fair trial, we should examine the questions themselves and, in addition, "the demeanor and conduct of the trial judge throughout the trial, to search the record for evidence of partiality or bias" which would indicate that the judge believed Allred to be guilty. Parodi, 703 F.2d at 776. In this case, there is nothing to suggest a bias by the district court against Allred. Moreover, the questioning at issue did not go directly to the issue of Allred's guilt or innocence but was brief and directed at the government's witness.
 
 
 26
 The direct evidence of Allred's guilt, presented during his trial, was substantial. A DEA agent testified that Allred had lied when first questioned about numerous things. He made statements that he had not been in New York and that he did not know Warner. There was direct evidence that Allred was the leader of the expedition to New York. He organized the trip, he paid for the tickets, and he paid for shopping purchases of Robinson and Warner. When questioned about purchasing the crack cocaine from a red-headed Puerto Rican, Allred said, "Yes, we did meet with him, but I didn't buy the dope. Kiwi [Robinson] did." He and Robinson had access to the denim bag in which the crack was found, and when DEA agents approached Warner to search the bag, he told her to run. When the crack was found, Warner said, "They [Allred and Robinson] must have put it in there."
 
 
 27
 At the end of trial the court instructed the jury not to assume that the court had formed any opinion on matters to which questions from the bench related. The jurors were further instructed that they, not the judge, were the ultimate deciders of the credibility of the witnesses. It cannot be said that but for the error, Allred probably would have been acquitted.
 
 
 28
 Because the court's questioning of Warner did not deny Allred a fair trial and did not result in a miscarriage of justice, it was not plain error. See United States v. Field, 875 F.2d 130, 135 (7th Cir.1989).
 
 III.
 
 29
 In a supplemental brief, Allred, without the benefit of counsel, has raised two additional issues challenging the validity of his convictions. First, he argues that his Fourth Amendment rights were violated when the DEA agents stopped Robinson, Warner, and him for questioning and then searched Warner's bag. He also argues that there was insufficient evidence that he had constructive possession of the cocaine.
 
 
 30
 The DEA agents had ample grounds to suspect illegal activity when they made the investigative stop. They possessed information that cocaine was being imported into the Greensboro area from New York City via bus and that drug couriers were known to travel together on the buses. This information, along with Allred's statement, "Run, Monica, run," and the fact that the defendants and Warner left the bus at an unscheduled stop were sufficient to create a reasonable suspicion in the minds of the DEA agents that criminal activity was afoot. See Terry v. Ohio, 392 U.S. 1 (1968). In addition, Warner consented to the search of her denim bag. Even had she not consented, Allred does not have standing to challenge the validity of a search of her bag to defeat his conviction. See Rawlings v. Kentucky, 448 U.S. 98, 104-06 (1980) (no legitimate expectation of privacy in purse belonging to another).
 
 
 31
 As to the contention that the evidence was insufficient to support the verdict, this has been addressed in connection with Point II, above.
 
 
 32
 Finding no merit in the defendants' appeals, the convictions are
 
 
 33
 AFFIRMED.