993 F.2d 1550
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Wesley SMITH, Defendant-Appellant.
 No. 92-1726.
 United States Court of Appeals, Seventh Circuit.
 Submitted Jan. 13, 1993.
Decided June 1, 1993.
 
 Before CUDAHY, FLAUM and MANION, Circuit Judges.
 
 ORDER
 
 1
 A jury convicted Wesley Smith of various drug-related offenses. Smith avoided sentencing for over six years by escaping custody, to which he subsequently pleaded guilty. The court sentenced Smith to five-year concurrent terms on the drug-related counts and a consecutive three-year term for the escape. Smith does not appeal his convictions for conspiracy to distribute and distribution of cocaine; rather, Smith challenges the sufficiency of the evidence supporting his convictions for possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), and two counts of interstate travel in aid of racketeering, 18 U.S.C. § 1952. On these counts, Smith also claims the government's inadvertent inversion of crime locations was a prejudicial variant in the indictment. We affirm. Substantial evidence supports the convictions and the government's alteration of the indictment merely corrected a scrivener's error.
 
 I. Sufficiency of the Evidence
 A. The Evidence at Trial
 
 2
 In Hammond, Indiana on October 21, 1985 a confidential informant arranged to introduce Drug Enforcement Administration (DEA) agents to William Morgan. Morgan informed the agents of a cocaine supply source in Chicago, Illinois. They exchanged telephone and beeper numbers and talked the next day. Morgan and the agents discussed the purchase of one ounce of cocaine, costing approximately $2,000.00. The agents gave Morgan directions from Chicago, Illinois to Hammond, Indiana, where they met at the Gallery Restaurant. Morgan arrived at the restaurant with Wesley Smith. The agents asked about the ounce of cocaine, and Smith replied that he had it in his boot. After a short trip to the restroom, Smith returned and placed on the table an ounce of 85% pure cocaine. After the agents tested the drug in their car, they returned to hand Smith $1850.00 under the table and Morgan $150.00 for arranging the deal. During the conversations, the agents told Morgan and Smith that they wanted a source for large quantities of cocaine. Smith agreed to provide such a source. On November 7, 1985 the agents met with Morgan in Chicago to arrange a purchase of $40,000.00 worth of cocaine. In later telephone calls the agents arranged for Smith to deliver at least nine ounces of cocaine for $13,000.00. Smith wanted the exchange to take place in Chicago, where he could "pull a lot of strings." The undercover agents, however, insisted on neutral ground.
 
 
 3
 The agents gave Smith directions from Chicago, Illinois to Munster, Indiana, where they were to meet at Arnie's Hot Dog, across the street from Arby's Restaurant. On November 18, 1985, when Smith arrived at Arnie's Hot Dog, Mark Smith (Mark) got out of the car and (followed by the agents) entered Arnie's, carrying a beige plastic bag. Smith walked to the agents' car where they discussed how to transact the deal. During the discussions Smith twice left the agents' car and went into Arnie's (where Mark was sitting). Smith wanted to see the money first, and then deliver the cocaine (which he stated was with someone in the area). But the agents would not agree and so they decided to drive to nearby Montgomery Ward to discuss the deal with other undercover agents.
 
 
 4
 At Montgomery Ward's, the agents and Smith finally agreed to an exchange. The agents would deliver the money to Smith in a designated telephone booth after receiving a call that the cocaine was delivered properly. On the return trip, the agents and Smith again discussed the price. Smith wanted $16,000.00, but the agents were only willing to pay $13,000.00. So Smith agreed to postpone the deal. The agents dropped Smith off at Arby's, where he was promptly arrested. Mark was then arrested across the street in Arnie's. Two employees alerted the agents to a plastic bag where Mark had been sitting, which turned out to contain 328.6 grams of 82% pure cocaine in nine individual packets. At the time of his arrest Smith possessed a beeper, telephone numbers and an address book containing information used in the weeks of arranging the drug purchases. The evidence at trial also consisted of various tape recordings of the pertinent telephone conversations.
 
 B. Discussion
 
 5
 A criminal defendant bears a heavy burden when arguing that the government did not provide sufficient evidence for the jury to convict. The question is whether after viewing the evidence in a light most favorable to the prosecution, including reasonable inferences therefrom, any rational jury could have found proof beyond a reasonable doubt on the essential elements of the crimes charged. United States v. Lowry, 971 F.2d 55, 65 (7th Cir.1992).
 
 
 6
 1. Possession of cocaine with intent to distribute.
 
 
 7
 Pursuant to 21 U.S.C. § 841(a)(1), possession of cocaine with intent to distribute, the government had to prove: "First, the defendant knowingly or intentionally possessed cocaine; Second, the defendant possessed cocaine with intent to distribute it; and, Third, the defendant knew the substance was a controlled substance." United States v. Durades, 929 F.2d 1160, 1168 (7th Cir.1991). Smith argues that the government failed to prove that he possessed cocaine. True, under the facts at no time did Smith actually possess the cocaine contained in the plastic bag. Nor did the agents find Mark possessing the cocaine. However, the law does not so narrowly define possession as to require an arrest while holding the proverbial "smoking gun." Constructive possession is enough. Id.
 
 
 8
 To establish constructive possession of a controlled substance, the government must produce evidence demonstrating "ownership, dominion or control over the contraband itself, or the premises or vehicle in which the contraband is concealed.... In other words, there must be some nexus between the accused and the prohibited substance."
 
 
 9
 United States v. Galiffa, 734 F.2d 306, 316 (7th Cir.1984) (citations omitted). See United States v. Garrett, 903 F.2d 1105, 1112 (7th Cir.) (and cases cited therein), cert. denied, 498 U.S. 905 (1990).
 
 
 10
 In this case, the government clearly established a connection between Smith and the cocaine: the agents witnessed Smith and Mark together in a car when they arrived in town, and observed Mark enter Arnie's carrying a plastic bag. During one of Smith's trips into Arnie's after talking to the agents across the street, Smith bent down next to the booth where Mark sat. The agents testified that Smith had stated he had someone in the area with the cocaine. Smith had arrived in town with the pre-announced purpose of selling sell nine ounces of cocaine. The plastic bag that was ultimately recovered near Mark's seat in Arnie's contained nine one-ounce packets. And Smith's name and beeper number were listed in a telephone book possessed by Mark. From this evidence a jury could have reasonably inferred that Smith constructively possessed the cocaine. See United States v. Rusher, 966 F.2d 868, 878 (4th Cir.), cert. denied, 113 S.Ct. 351 (1992); United States v. Saunders, 973 F.2d 1354, 1361 (7th Cir.1992), cert. denied, 113 S.Ct. 1026 (1993); United States v. Smith, 962 F.2d 923, 929 (9th Cir.1992) (and cases cited therein); United States v. Martinez, 937 F.2d 299, 305 (7th Cir.1991).
 
 
 11
 2. Interstate travel in aid of racketeering.
 
 
 12
 In the circumstances of this case, to convict Smith of interstate travel in aid of racketeering, 18 U.S.C. § 1952, the government had to prove that Smith traveled in interstate commerce to carry on the unlawful activity: that regarding the October 22, 1985 transaction, Smith traveled from Chicago, Illinois to Hammond, Indiana (Count 4), and that regarding the November 18, 1985 transaction, Smith traveled from Chicago, Illinois to Munster, Indiana (Count 12). United States v. Atterson, 926 F.2d 649, 656 (7th Cir.), cert. denied, 111 S.Ct. 2909 (1991).
 
 
 13
 On October 22, the agents provided Smith's co-conspirator Morgan, who had an Illinois telephone number, with directions from Chicago to the Gallery Restaurant in Hammond. Morgan later telephoned the agents and stated that he was in Calumet City (in Illinois) and needed further instructions to get to the restaurant. When Morgan arrived Smith was in the car. Count 4 also alleged aiding and abetting; thus, whether Smith was in the car with Morgan while in Illinois, or was merely picked up along the way in Indiana, Smith was involved in the interstate travel that led them to the restaurant where they sold the first ounce of cocaine. See United States v. Baker, 905 F.2d 1100, 1106 (7th Cir.), cert. denied, 498 U.S. 876 (1990). Regarding the November 18 meeting, Smith himself received directions from Chicago to Arnie's in Munster. Even throughout the drug dealings, Morgan and Smith stated that they would prefer that transactions take place in Illinois, rather than in Indiana. The jury was entitled to infer from these facts that Smith twice traveled across the Illinois/Indiana border to distribute the cocaine.
 
 II. The Indictment
 
 14
 Smith was indicted for drug activity involving two separate transactions: Count 2 alleged distribution of one ounce of cocaine on October 22 in Hammond, Indiana; Count 4 alleged the interstate travel involved. Count 3 alleged possession with intent to distribute on November 18 in Munster, Indiana; Count 12 alleged the interstate travel involved. The evidence before the grand jury reflected the evidence presented at trial. However, the actual text of the indictments switched either the towns or dates involved. The indictments involving Counts 2 and 4 identified Munster, rather than Hammond; Counts 3 and 12 identified Hammond, rather than Munster. At the close of the government's case in chief, the court corrected the indictments.
 
 
 15
 Both parties agree that only the grand jury can materially amend a criminal indictment. See United States v. Field, 875 F.2d 130, 133 (7th Cir.1989). Smith argues that prior to the changes in the indictments, a material variance existed between the indictments and the evidence at trial, affecting his substantial rights. The district court, however, found that "The fact that the particular dates in Indiana may have been inadvertently switched does not lend itself to a matter of substance." In United States v. Leichtnam, 948 F.2d 370, 376 (7th Cir.1991), we recognized two exceptions to the general rule that an indictment may not be amended except by resubmission to the grand jury. Only the first applies in this case, covering variations that are "merely a matter of form," see Russell v. United States, 369 U.S. 749, 770 (1962):
 
 
 16
 An indictment may be modified, either physically or constructively (because the evidence or the jury instructions effectively "amend" it) to correct for a typographical or clerical error or a misnomer. In addition, unless a particular date is an important element of the charged offense, a formal change to the date specified in the indictment (or proof or instructions that the charged crime was committed on a different date than the indictment alleges) will not impermissibly amend the indictment.
 
 
 17
 Leichtnam, 948 F.2d at 376 (citations omitted). We agree with the district court that the changes in the indictment were merely a matter of form.
 
 
 18
 The evidence before the grand jury and at trial showed that the drug activity on October 22 occurred in Hammond and on November 18 in Munster. Smith does not allege that the government ever intended to prove otherwise. Any variation by switching the dates or towns could not have misled Smith. Changing the dates in the indictment corrected a harmless error and did not deprive Smith of an opportunity to adequately prepare a defense. See Fed.R.Crim.P. 52(a). In his opening statement to the jury, Smith conceded that he had traveled to Indiana; his defense at trial questioned his knowledge of and involvement in the transactions, not whether he was present at the scene on the corresponding dates. Smith also does not reply to the government's assertion that he was provided sufficient discovery and was not prejudiced in preparing for trial. See United States v. Jungles, 903 F.2d 468, 476 (7th Cir.1990) (any variance between the indictment and evidence at trial is subject to the harmless error rule). Finally, the place where the drug activity occurred was not an element of any of the crimes charged.
 
 III. Conclusion
 
 19
 Substantial evidence supports Smith's convictions for possession with intent to distribute cocaine and interstate travel in aid of racketeering. The alteration of the indictment was also a matter of form, not substance, which raises no constitutional error. The decisions of the district court are AFFIRMED.